## DANIEL JAMES V. THE STATE.

1. AMENDMENT OF INDICTMENT.—Was properly allowed where the word "court" was omitted where it should have been inserted to show where the prosecution was had.
2. RIGHT OF SHERIFF IN PREVENTING AN ESCAPE.—See discussion of the authority given the sheriff to use force in preventing an escape by a prisoner in custody.
3. ASSAULT WITH INTENT TO MURDER.—Where a prisoner attempting an escape was pursued and fired on by the sheriff, and the prisoner returned the fire, and was on trial for an assault with intent to murder the sheriff, and the testimony tends to show that the defendant may have supposed the sheriff had wrongfully fired on him and had attempted or endangered his life, and that what was done by defendant was whilst laboring under the influence of resentment or passion arising from such provocation, the jury should be instructed so as to give the accused the benefit of such evidence in reducing the punishment to a misdemeanor.
4. ASSAULT UPON AN OFFICER.—While the law makes the killing of a sheriff in the discharge of his duty murder, still if he act outside of his authority or exercise it unlawfully, the party resisting his acts is not prevented by the official-character of the sheriff from setting up said unlawful acts to justify or extenuate the offense against the officer in resisting such acts.

APPEAL from the Criminal Court of the city of Jefferson. Tried below before the Hon. J. L. Camp.

*G. W. Todd,* for appellant.

*A. J. Peeler, Assistant Attorney General,* for the State.

GOULD, ASSOCIATE JUSTICE.—This is an appeal from a conviction for assault with intent to murder. In the bill of indictment as presented and filed the word "court" was omitted where it should have been inserted in order to show that the indictment was presented in the Criminal "Court" of the city of Jefferson. The court permitted the district attorney to amend by inserting the word omitted, and in so doing did not err. (Brosshard *v.* The State, 25 Tex. Supp., 209.)

The leading facts of the case are, that the defendant and two other prisoners, confined in the jail of Marion county, escaped from the jail by overpowering the jailor when he opened the door to give them their breakfast.    In the scuffle the jailor's pistol was wrenched from his hand, being however broken in the struggle.    The defendant fled down the steps, secured another pistol, which the jailor had left below, and continued his flight.    In the pursuit the jailor fired in the direction of defendant; he says that he did not try to hit him, and that the distance was about two hundred yards.    A witness for defendant says the distance was about one hundred yards, and that he thought he saw defendant stagger.    It does not appear, however, that defendant was struck, nor that the shot had any effect in stopping his flight.    The jailor continued the pursuit, overtook defendant, and when in a few yards of him, says that he, with gun in hand and pointed in direction of defendant, demanded his surrender.    Defendant turned on him and commenced firing with the pistol which he had taken. The jailor's gun was empty, and he took refuge behind a tree, keeping his gun, however, leveled at defendant.    The defendant proceeded to walk around the tree, so as to uncover the jailor's body, and shot at him four times at a distance of ten or fifteen paces, when the jailor finally rushed on him, and knocked him down with the breech of his gun, the defendant continuing to resist, and striking the jailor with the pistol, wounding him in the knee.    The same witness for defendant, Nels. Hill, says that he was about one hundred yards off when the jailor came up to defendant; "heard what was said, and heard the jailor tell defendant he would kill him, and saw him level his gun on defendant before defendant fired."    This witness gives no further details whatever.

The jailor testified that he saw no commitment for defendant when he was placed in jail, but held him under the sheriff.    It appeared that there was an affidavit charg-

ing defendant with theft of a horse, and a warrant from a justice for his arrest. A day or two after the attempted escape he was taken before a magistrate for examination and commitment on that charge.

On the subject of manslaughter the jury was charged, " In order to reduce an offense from murder to manslaughter, it is not enough that the mind was merely agitated by passion arising from some provocation, but the provocation must have arisen at the time of the commission of the offense, and must have been such as would produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, or was sufficient to render the mind incapable of cool reflection, but also this state of mind must have actually existed at the time of the commission of the offense."

The court further charged that " The sheriff, or any other person acting under and by his authority, has the right to recapture a prisoner escaping from lawful arrest and custody, and has the right to use such force as may be necessary to overcome any resistance that may be offered to his lawful authority in making such rearrest; and under such circumstances the party escaping or resisting arrest cannot excuse himself in law for an assault made upon such officer, or person acting under his authority, on the plea of self-defense.

" An officer, or person acting under his authority, has no right to take life in making an arrest, except to defend himself from threatened violence made by the person being arrested; and such officer is authorized to use such force only as is necessary to defend himself from the resistance offered."

The counsel for defendant asked the following charge, which was refused: " If you believe from the testimony that at the time the defendant Dan James is charged to have committed the offense alleged in the bill of indictment, he was retreating from Harrington, and that Harrington had just immediately before that time discharged a loaded gun

at him, and had threatened to kill defendant if he did not surrender himself, and at that time pointed a gun at him, and that thereby defendant was put in fear of his life or serious bodily injury, or believed that Harrington at that time was about to kill or seriously injure defendant, the acts of defendant at that time in repelling the violence, real or imminent and pending, of the said Harrington, were lawful acts of defense, and do not constitute an offense against the laws of this State, and you will acquit defendant."

We think that this charge was properly refused. Aside from the fact that it was objectionable in its form, and was in part at least a charge on the weight of the evidence, it was erroneous in substance, because it assumes that the defendant was without fault, had done nothing to bring upon himself the necessity which he would set up; and further, because it makes his justification depend on his belief that his life was in danger without reference to the reasonableness of that belief. If the threat to kill was accompanied with a demand for surrender, the court might well refuse a charge which assumed that such a threat so qualified could have reasonably led defendant to believe that the jailor intended to kill him whether he surrendered or not. There was then no error in refusing the charge asked, nor do we think the facts of the case required the court to charge on the law of self-defense. The evidence shows an escape by violence, and that the defendant, although fleeing, was at the same time in the attitude of or at all events prepared for resistance. Under the circumstances of his escape the officer had the right to treat him as still resisting, and to approach him with a gun pointed in his direction, demanding his surrender. Such an approach, with such a demand, is far from indicating an intention to kill on the part of the jailor. At the same time the defendant is so much in fault in bringing on himself this arrest that a failure to charge on the law of self-defense cannot be regarded as error. If indeed the defendant under the evidence could

claim that he had evidently ceased to resist, and had evinced a willingness to submit to rearrest, and that notwithstanding this the jailor was attempting to take his life, he certainly under such circumstances might defend his life, and the court should so have charged. But we are unable to see that the evidence in any degree tends to show either a cessation of resistance on his part, or that the jailor at the time he was fired on actually or apparently designed anything more than to enforce defendant's surrender.

It is objected that the court did not instruct the jury as to what constituted lawful arrest and custody. The evidence does not appear to have required the court to give a charge on this point. There was a warrant for defendant issued on an affidavit charging him with theft of a horse, and there seems to be no reason to question that he was legally held under valid authority.

The charge as to the presumption of intent to kill, arising from the use of a deadly weapon in a manner likely to produce death, is nothing more than the application to the case of a rule of evidence laid down by the code. (Paschal's Dig., art. 1654.)

We are of the opinion, however, that the evidence so far tends to show that the defendant may have supposed that Harrington had unjustifiably fired upon him, and either attempted or endangered his life, and that whatever he did was whilst under the influence of resentment or passion arising from this provocation, as to entitle him to have the jury pass on this phase of the evidence under proper instructions. In the case of Johnson *v*. The State, decided at the present term, it was held that a charge on the subject of manslaughter, similar to that given in the present case, was objectionable, because of its negative form, and because it failed to instruct the jury with sufficient fullness. The court, it is true, tells the jury in a subsequent part of the charge that the jailor, in a case like this, had no right to kill, except in self-defense. No application of this rule is

made so as to show how the offense of the defendant might possibly be mitigated by the provocation of an unjustifiable attempt on his life. If in truth the defendant reasonably believed that his life had just been unjustifiably attempted, and under the influence of passion arising from this recent provocation committed the assault charged, the offense would not be assault with intent to murder, but would be an aggravated assault.

If an officer " is justified by his authority and exercises that authority in a legal manner, if he be resisted and in the course of that resistance is killed, the offense will amount to murder." (Rosc. Cr. Ev., pp. 575, 685.) But where the officer acts without authority, or exceeds his authority and acts illegally, his official character does not prevent the defendant from claiming that he killed the officer under circumstances reducing the offense to manslaughter. (Id.)

Because of this defect in the charge the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Associate Justice REEVES dissenting.]