LIBRADO GONZALES V. THE STATE.

*No. 546. Decided March 9th, 1895.*

*Motion for Rehearing Decided March 27th, 1895.*

**1. Impeachment of Defendant as a Witness.**

Where a proper predicate has been laid for that purpose, the testimony of a defendant, as a witness in his own behalf, may be impeached by proof of contradictory statements; and, unless he admits, unequivocally, that he made the statements to the impeaching witness, the State has the right to prove by such witness that he did.

**2. Charge of the Court—Mutual Combat—Manslaughter.**

A defendant who has been convicted of manslaughter, can not claim any possible injury from a charge on mutual combat, even if such charge be not required by the evidence.

**3. Charge—Imperfect Self-defense.**

A charge upon imperfect self-defense, though it may not have been called for by the evidence, can do no possible harm where there is no self-defense in the case.

**4. Same—Manslaughter.**

On a trial for murder, where the court instructed the jury, "If the deceased attacked the defendant with a pistol while they were walking from Moro's house, and after such attack retreated and quitted the combat; and then, under the influence of sudden passion produced by the assault, fired upon and killed the deceased, he would be guilty of manslaughter." Held: The charge was correct.

ON MOTION FOR REHEARING.

**5. Right of Argument on Motion for Rehearing—Practice.**

Under Rule No. 14, of the Supreme Court, argument on a motion for rehearing is confined to a brief explanation of the grounds of the motion, so as to make them intelligible to the court, with a reference to statutes and decisions thereto, unless further argument is requested by the court; but, counsel have no right to enter upon an argument of the motion unless invited by the court.

APPEAL from the District Court of Victoria. Tried below before Hon. S. F. GRIMES.

On a trial under an indictment charging him with the murder of one Jose Aguilla on the 22nd day of January, 1893, appellant was convicted of manslaughter, with punishment assessed at four years imprisonment in the penitentiary.

On the night of the 22nd of January, 1893, a number of Mexicans,

men and women, were congregated at the house of one Fred Moro, in Victoria county, Texas, sitting up with the corpse of Moro's wife. The night was very dark and drizzling rain. Defendant and deceased were both present with the company sitting up with the corpse. Defendant was standing some distance away from the house, in conversation with two or three Mexican men, when deceased approached the party with a pistol in hand. And when he came up behind the man who was facing defendant he put his arm around the man, with pistol in his hand— asked, "How do you like *this?*" Defendant said to deceased, "Let me see you a minute," or "let me speak to you a minute." And deceased and defendant walked off some distance together, defendant having his arm around deceased's shoulder. In a short time firing was heard in the direction they had gone; and soon defendant came from where the shooting occurred, and said he had killed the deceased.

Several shots had been fired, and there were five bullet holes in the body of deceased; one or more in the back and one in the back of the head going through. Several of the witnesses testified, that after hearing the first shot, they looked in the direction; saw deceased fall at the third or fourth shot. Heard him say, "You have the best of me (or you have me now), come and finish me," and that defendant went back to him and shot again, the flash showing that the shot was downwards as though made at some object on the ground.

Defendant testified in his own behalf. Stated that he and deceased had had a difficulty several months before at a ball given at his (defendant's) house, and that he had knocked the deceased down and given him a severe thrashing. That they had quit speaking to each other, and that he had heard of a number of threats made by deceased against him. He stated that when deceased came up behind the party to whom he was talking and presented the pistol towards him, and asked him, "How do you like this?" that he did not shoot him then, because he thought he could talk to him and settle the matter without trouble. I said to him, "Jose, let me see you a minute," and placed my left arm around his shoulder, and we started to walk off. I asked him why he wanted to act as he was acting towards me, and he made no reply, but I felt him punch me in the side with the muzzle of his pistol. I immediately caught the pistol, and pushed it to one side, and jerking my own began to shoot. I finally got his pistol from him and threw it away, but did not stop shooting until all my loads were gone. Never saw deceased fall, and am positive he had not fallen when I shot last. I never heard him say, "You have got me, come and finish me," nor did I hear him say anything from the beginning to the end of the difficulty. The District Attorney asked him if he did not tell the sheriff, Sullivan, the next day that he had wrenched the pistol out of deceased's hand and then shot him, and continued to shoot him until he fell, and that deceased said, "You have the best of me, come and finish me," and that, "I then shot the deceased the last time as he lay on the ground?" Defendant denied that he had made any such statements to the sheriff. The sheriff, Sul-

livan, testified: "That the next day after the killing, he was on the road from Victoria to where defendant lived; was going to arrest defendant; met defendant coming to town; told him I was looking for him; he replied he was likewise looking for me. I arrested him, or rather he surrendered to me, and on the way back to town I asked him to tell me about the killing." Sullivan stated that defendant told him, "That the first thing he knew, after walking off, was that he felt deceased's pistol punch him in the side; that he caught the pistol with his left hand and wrenched it loose from deceased's hand and threw it off, at the same time drawing his own pistol and shooting; that he did not know whether deceased shot or not; that he (defendant) shot all his loads; that he heard deceased say, before he shot the last shot, 'You have got me now, finish me;' and after hearing this, shot once. He showed me his hand, it was skinned; the skin knocked off in one or two places, and told me that was done in the scuffle over deceased's pistol; and said, also, that a ring he had on was broken in the scuffle; he told me he caught the pistol and tried to keep it away from his body to keep deceased from shooting him, and that he wrenched the pistol out of deceased's hand and threw it off from him, and that he shot deceased until he fell, and then heard deceased say, 'You have the best of me, come and finish me,' and at that time deceased was on the ground; he said he then shot him the last time."

Proof of the contradictory statements made by the defendant to the sheriff was objected to on the ground that at the time they were made defendant was in arrest, and had not been warned.

*A. S. Thurmond*, for Appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—This is a conviction for manslaughter. The defendant testified. The proper predicate being laid, Sullivan was introduced to prove contradictory statements made as to material matter sworn to by him. The State had the right to question him regarding this matter, and, unless he admitted unequivocally that he had made the statement to the impeaching witness, the State had the right to so prove by such witness that he had. The court submitted to the jury the rule of law applicable to mutual combat. The charge upon this subject was required by the evidence; and, if it was not, the appellant being convicted of manslaughter, there was no possible injury to him in giving this charge. There is an exception reserved to the charge regarding the doctrine of imperfect self-defense. This charge was called for by the evidence; and, if it was not, no possible harm could have been done appellant, because there was no self-defense in this case. The court instructed the jury: "If the deceased attacked the defendant with a pistol while they were walking from Moro's house, and after such attack retreated and quitted the combat as far as he could, and the defendant, then under the influence of sudden passion, produced by the assault,

fired upon and killed the deceased, he would be guilty of manslaughter." An exception was reserved to this excerpt from the court's charge. Be the character of the attack of whatever nature it may have been, whether of a deadly character or less, the proposition of law laid down in the charge is correct, and was called for by some evidence in the case, and in giving this charge to the jury the only defense to murder presented by any evidence was submitted to the jury. We are writing upon this case—the case as presented to us by this record—and not of all cases which may arise. The evidence is amply sufficient to support this conviction for manslaughter. When the mortal wound was inflicted the appellant was in no possible danger of any character of violence. He the (deceased) was at that time without arms, which was known by appellant, and nothing less than manslaughter was in the case. Judgment affirmed.

*Affirmed.*

HENDERSON, J., absent.

---

### ON REHEARING.

HURT, PRESIDING JUDGE.—On motion for rehearing and to transfer the cause to Austin for argument. The judgment herein was affirmed at a former day of this term. Now appellant files a motion for a rehearing, and another motion to transfer the motion for rehearing to the Austin term of this court, because there is not sufficient time left at this term to hear oral argument on said motion for rehearing. Rule No. 14 of the Supreme Court provides that argument on motions for rehearing shall be confined to brief explanation of the grounds in the motion, so as to make them intelligible to the court, with a reference to the statutes and decisions thereto, unless further argument is requested by the court. Upon submitting a motion, counsel have the right to make this brief explanation, etc., but no right to enter upon an argument upon the motion unless invited by the court. We have deemed it proper to make these observations in order to call the attention of the profession to the rule. We will in the future strictly enforce this rule. The motion to transfer the cause to Austin is refused. The motion for rehearing, having no merit in it, is also overruled.

*Motion overruled.*