## ABE BRISCOE v. THE STATE.

### No. 1055.    Decided June 10th, 1896.

**1.  Murder—Evidence—Defendant's Statement at Examining Trial.**

On a trial for murder, the voluntary statement, made by defendant and reduced to writing and certified to by the magistrate, is legitimate and admissible evidence when it is shown that defendant desired to make said statement; and, that before the same was made, the magistrate warned him, that, if he made it, it could be used in evidence against him.

**2.  Bill of Exceptions—Qualification by Judge—Practice.**

If counsel are not satisfied with a bill of exceptions as qualified by the court, it becomes their duty to prepare a bill, under the statute in such state of case; and this court approves the action of the trial court in stating in his qualification to a bill of exceptions, that, in certifying the bill, he does not certify to the truthfulness or correctness of the matters stated as grounds of exception.

**3.  Murder in the Second Degree—Charge as to Where Facts Show Murder in the First Degree.**

On a trial for murder, where the evidence establishes murder in the first degree, defendant cannot be heard to complain that the court gave him the benefit of a charge upon murder in the second degree.

APPEAL from the Criminal District Court of Harris. Tried below before Hon. E. D. CAVIN.

Appeal from a conviction for murder in the second degree; penalty, twenty-five years' imprisonment in the penitentiary.

The indictment charged Mack Jones, Abe Briscoe, appellant, and Martha DeCosta with the murder of one William Payne, on the 24th of January, 1896, by cutting him with a knife or striking with some instrument to the grand jurors unknown. Upon motion of defendants a severance was had, and appellant, Abe Briscoe, alone placed on trial; Mack Jones having been previously tried and acquitted. Martha De-Costa testified as a witness on this trial, and the District Attorney stated that he had agreed to dismiss the case as to her.

The parties to the homicide were all negroes, defendant a preacher. William Payne and Frances, his wife, two old people, were murdered

at their home between 10 and 12 o'clock at night. Frances Payne was found in a dying condition in one of the rooms in the house. She had three wounds on the head; the skull fractured and brains oozing out. An axe handle, with blood on it, was found in the room; and, in the opinion of the physician who was called in, the wounds which were all mortal, could have been made with such a weapon. The doctor testified, he found William Payne out in the yard, in front of the door of the stable. He had a wound on his head and a bruise on his mouth and lip, and his throat was cut from ear to ear. He was dead. A knife was shown this witness, and he said, that the wound in the neck could have been made with such a knife; and that the knife looked as if it had blood spots upon it. This knife was the property of one Mack Jones, and found by the officers in Jones' house by means of information given them by Jones.

· It seems that these old people had a little money, they had saved up, about the premises, and this fact was known to the parties implicated in the murder.

Martha DeCosta testified, in substance, that she saw Abe Briscoe and Mack Jones commit the murder; that Briscoe killed William Payne, at the stable; knocked him in the head with a stick and then cut his throat. That Mack Jones killed Frances Payne (who was her sister) with an axe handle, in the house.

Mack Jones, testified, that the day before the killing Briscoe came to his house and wanted him to help him get up a festival to pay off a debt on his, Briscoe's, church. That he told him that he did not know how they could get the money, and Briscoe said, he knew where there was some money, but it would take some slaughtering to get it—but did not say where. Jones says, he told him he was going away and could not be with him; and, he further testified that on the night of the killing he stayed away from his home.

T. J. Mahoney, a justice of the peace, testified: That after Briscoe was arrested and placed in jail, he received a telephone message to come to the jail as Briscoe desired to make a statement. That the following is the statement made by Briscoe, and which he reduced to writing:

"Houston, Texas, February the 8th, 1896. Abe Briscoe, who was first warned and sworn, says in regard to the killing of William Payne, Frances Payne, on the night of January 30th, 1896, as follows: Between 6 and 7 o'clock, p. m., I was in Jones' house talking with him, he said that the old people across the way, meaning the Paynes, had money, and that he was hard up, and asked me if I would not go in with him to get it? I told him that it was wrong to do anything of the kind, but he only laughed at it, and he said, that a nigger's life was nothing, as he had already shot one nigger. I would not have anything to do with him and went home. About 8 o'clock, I was at home, when I heard some one call, and I went to the window and then I saw Jones and his wife. Jones had his hat pulled down on his head. I had an idea that he had murder in his heart, from what he had already told me;

both himself and wife went away then, and about 10 p. m., as near as I can fix it, I had got up, as my wife was sick, and then I heard a thumping noise as if some one was knocking or pounding on the floor. I looked out, as I thought some one was in my church. I then saw a big light in the house of Martha De Costa, and the noise that I heard was in the house of the old people, Payne, but I saw no light in their house. I was then fully satisfied that Jones had killed the old people, from what he had expressed to me before. About four or five minutes after I heard the loud knocking and pounding, I was standing on my gallery looking out, and I saw and heard a man running along. I hailed him, but got no answer, and then I recognized him as Jones, and he had the same clothes on that he had when he was talking to me before, and he had his hat pulled down on his head. I then called Jones, but he did not answer, but kept on moving. He was then running in what I would call a fast dog trot. He was coming towards town, and he went out of my sight. About five minutes after Jones disappeared, Martha De Costa, Frances and Betsey, came to my house and called me, and Martha said to me, that 'somebody down there was killing us out.' She said, that her brother-in-law, Bill, was dead at the stable, and she was satisfied that sister was dead in the house. I then put on my shoes and got my hat and went to Buck Shepard's house and told them to wake up and come along, as someone was killing out the old man Payne and family. Martha and the two girls were with me when I went to Buck Shepard's house. When I went to the house there was no light, but we got a light and went in the house and found the old woman with her head in the fireplace and her feet near the door. I told someone to go and tell Mr. Parker, as he was the nearest sheriff, about it. Martha De Costa then said, she was looking for it, as it was all her own fault, and 'I was looking for this tonight.' When we got back, the old man was lying in the yard near the stable on his back. He was dead. In the morning, after the sheriff had gone away, Martha De Costa said, that 'now we are now entitled to the property,' and that she was going to stay there, as the brothers would not put her out of it. I now swear most positively that Jones was at his house about 6 p. m., the night before the murder when I was there; and, as I went to go home, Jones came out to the yard, and he then asked me if I would help him get some money, as he was hard up, and I asked him how, and he said that Uncle Billy thought that he was smart, and that he thought nothing of killing a nigger, as he had already shot one nigger before.

[Signed]          "ABE BRISCOE.
"Witnessed by A. B. Anderson, J. B. Parker, Rev. J. H. Mackey.
"Sworn to and subscribed before me this 8th day of February, 1896.
"J. T. MAHONEY,
"Justice of the Peace, Precinct No. 1, Harris County, Texas."

*Wm. A. Carter,* for appellant, filed an able and interesting brief.

*Mann Trice,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of murder in the second degree, and allotted a term of twenty-five years in the penitentiary, and appeals.   The indictment was against Mack Jones, Abe Briscoe, and Martha De Costa.   Appellant was placed upon trial, and the prosecution dismissed as to the other two defendants, and they were used as witnesses on the trial of the case.   Appellant reserved a bill of exceptions to the action of the court in permitting a written statement, made and sworn to by the defendant, to be read in evidence before the jury.   Said statement was taken by J. T. Mahoney, justice of the peace. The objection urged, as stated in the bill of exceptions, was "that said statement was made by the defendant while he was under arrest and in jail, and after several parties, the said Mahoney being one, had talked to, requested, and urged the defendant to make such statement, and that the language used in said statement was not the language of the defendant, but the language of said Mahoney."   The court qualified said bill in the following language, to-wit:   "The approval of this bill is not to be taken as certifying that the reasons why the defendant objected to the admission in evidence of said written statement referred to in this bill are true, or for any foundation in evidence; but, on the contrary, in my judgment said reasons were wholly unsupported by the evidence, and directly contradicted thereby, as will fully appear from the statement of facts herein, and the approval of this bill shall only be taken to certify that the reasons stated therein were the reasons stated by the defendant's attorney when he objected to the introduction of this evidence."   The bill of exceptions, as qualified by the judge, and viewed from the statement of facts, to which the court referred, shows that the appellant desired to make a statement, and that he was warned, as shown by the written statement, introduced on the trial and certified by the justice of the peace who reduced the same to writing.   He was therefore not only warned, but desired of his own motion to make said statement.   The bill of exceptions as prepared by counsel was rather too indefinite to authorize its consideration, but as qualified by the judge it is sufficient for that purpose.   Where a bill of exceptions is qualified by the trial judge, and that qualification is antagonistic to the statements in the bill prepared by counsel, and the bill as thus qualified is accepted by the party presenting it, the judge's statement of the matters will control.   If counsel are not satisfied with the bill as qualified by the court, it becomes their duty to prepare a bill under the terms of the statute in such state of case.   We note with approbation the action of the trial court while qualifying this bill, stating that he did not certify to the truthfulness or correctness of the grounds of exception.   Frequently grounds of exception reserved in bills are based upon matters of fact, and the facts themselves are not stated in said bill, except as grounds of exception.   In all such cases, if such statements correctly represent the proceedings, the bill of exceptions should state them as matters of fact, and not as grounds of exception. The court very properly here states that he does not certify that the de-

fendant was not warned when the statement was made by him, as testified by Mahoney, but that he only verifies the bill to the extent that such an exception was urged.    There is no error manifested by this bill of exceptions.    It is urged that the court erred in charging the law applicable to a case of murder in the second degree, upon the ground that the facts showed murder in the first degree, if appellant was one of the guilty participants in the homicide.    We do not so understand the law. While the testimony may have shown a cold-blooded and unprovoked killing, still the defendant cannot complain that the court gave him the benefit of a possible doubt as to the origin, cause, and attendant circumstances of the homicide, and submitted the issue of murder in the second degree.    It is contended that the evidence in the case is insufficient to support the conviction.    The testimony of the two accomplices, DeCosta and Jones, shows, beyond any question, that the defendant is guilty.    DeCosta was an eyewitness to the homicide, and by her testimony Jones was a participant.    The witness, Lasker, testified to facts corroborrating her testimony, tending to connect Briscoe and Jones with the homicide.    There are some circumstances in the case, though slight, tending to show that he may have been an accomplice.    If he was not, then we think the corroboration sufficient from this source. The relation of these witnesses to the crime was properly submitted by the court in his charge to the jury.    Independent of Lasker's testimony, there are some circumstances, of more or less cogency, which tend to connect both Jones and Briscoe with the homicide, and, we think, sufficient under the law to support this conviction.    There is quite a mass of testimony along this line, and we do not propose to sum up or discuss the same.    We think the testimony, however, is sufficient to support the verdict of the jury, and the judgment is affirmed.

*Affirmed.*