### Ed Christian v. The State.

No. 2608.   Decided November 5, 1913.

Rehearing denied December 3, 1913.

**1.—Murder—Evidence—Res Gestae.**

Where, upon trial of murder, the court admitted testimony of the State that the witness was about half a mile from the shooting and ran there as soon as he heard it, finding deceased lying on the ground, who voluntarily told the witness of how and by whom he was shot, the same was res gestae. Following Rainer v. State, 67 Texas Crim. Rep., 87.

**2.—Same—Dying Declarations—Evidence.**

Where it was shown that the wound of deceased was necessarily fatal and he handed his pistol to the witness, saying that he would have no more use for it, there was no error in admitting in evidence the statements of the deceased made at that time as to who shot him, etc., as dying declarations.

**3.—Same—Cross-Examination—Bills of Exception.**

Great latitude is always permitted in the cross-examination of a witness, and where the bill of exceptions merely complained of certain questions which were asked the witness on cross-examination but not answered, there was nothing to review. Following Sweeney v. State, 65 Texas Crim. Rep., 593.

**4.—Same—Evidence—Co-Defendant—Witness.**

Where the proffered witness was under a separate indictment for the same offense for which defendant was being tried, he was incompetent to testify.

**5.—Same—Charge of Court—Rules Stated.**

See opinion for well established rules pertaining to the giving of charges and how the court's charge must be construed.

**6.—Same—Charge of Court—Alibi.**

Where, upon trial of murder, the theory of the defense was an alibi, but the evidence also raised the issues of manslaughter and self-defense, and defense of another, there was no error in the court's submission of these issues in connection with a complete and perfect charge on alibi, and the contention that the court should not have charged on either manslaughter or self-defense, etc., was not well taken; nor was the contention that the court by implication expressed an opinion as to the defense of alibi tenable.

**7.—Same—Article 743, Code Criminal Procedure—Charge of Court.**

It is not reversible error, under article 743, Code Criminal Procedure, that the court gave a charge to the jury which was more favorable than the evidence required, unless injury is shown to the rights of the defendant. Following Scruggs v. State, 35 Texas Crim. Rep., 622, and other cases.

**8.—Same—Rule Stated—Charge of Court—Alibi.**

While there may be cases where defendant's defense is an alibi that the court should not submit the questions of manslaughter, self-defense, and defense of another; yet, the facts of the instant case and the manner of raising the objections to the court's charge did not present such a case; and there could not have been any injury to the defendant even if the evidence did not call for the submission of these issues; besides, such issues were in fact raised by the evidence.

**9.—Same—Manslaughter—Charge of Court—Attempted Arrest.**

Where, under one theory of the evidence, it could be well contended that it showed the attempted arrest of defendant and his confederates by the deceased at the time deceased was killed was not a legal arrest or an attempt to arrest, the issue of manslaughter was thereby raised. Following Sherwood v. State, 29 Texas Crim. App., 334, and other cases.

**10.—Same—Self-Defense—Charge of Court.**

Where, upon trial of murder, there was evidence which would tend to show that the arrest attempted by the deceased was exercised in a wanton or menacing manner, this raised the issue of self-defense, and the court did not err in charging thereon. Following Jones vs. State, 26 Texas Crim. App., 1, and other cases.

**11.—Same—Unnecessary Force—Arrest—Manslaughter—Charge of Court.**

Where, upon trial of murder, the evidence concerning the attempted arrest by deceased of defendant and his companions raised the issue of the use of more force than was necessary for such purpose, the court correctly submitted manslaughter on this phase of the case.

**12.—Same—Defense of Another—Self-Defense—Charge of Court—Stolen Property.**

Where, upon trial of murder, the issue of the seizure of personal property, by the deceased as an officer and the use of unreasonable means thereby was raised

by the evidence, inuring to the benefit of defendant and his companions, the court correctly submitted the issue on self-defense and defense of another on that phase of the case.

### 13.—Same—Case Stated—Charge of Court—Alibi.

Where, upon trial of murder, the theory of the State was murder and that of the defense an alibi, but the evidence raised the issues of manslaughter, self-defense, and defense of another in defendant's favor, the court properly submitted these issues and the contention of the defendant that under his plea of alibi, his rights were thereby injured, is not well taken, and there was no reversible error.

### 14.—Same—Principals—Charge of Court.

Where, upon trial of murder, the evidence showed that the defendant and his companions conspired to burglarize a freight car, and did burglarize the same, and that in the attempt to escape with the booty, defendant shot and killed the deceased in his attempt to arrest him, there was no error in the court's charge on principals, the charge expressly requiring the jury that the defendant him-self, and not any of his companions, fired the shot and did the killing, and in case of reasonable doubt to acquit.

### 15.—Same—Murder—Charge of Court—Burglary.

Upon trial of murder, where the evidence showed that defendant and his co-conspirators agreed to arm themselves with deadly weapons to commit burglary and theft, there was no error in the court's charge in submitting article 1141, Penal Code, that all murder committed in the perpetration of burglary, etc., is murder in the first degree, and properly defining the offense of burglary and theft and applying the law to the facts; it appearing that the offense had not been completed when the defendant shot and killed deceased who was attempting to arrest him and his companions.

### 16.—Same—Circumstantial Evidence—Charge of Court.

Where the evidence did not raise the issue of circumstantial evidence, a charge thereon was not called for, and there was no error in the court's failure to submit same.

### 17.—Same—Accomplice—Charge of Court.

Where, upon trial of murder, it was questionable whether the evidence raised the question of accomplice as to certain witnesses save one, but the court, nevertheless, submitted a complete and admirable charge on the subject of accomplice testimony with reference to all of said witnesses, there was no rever-sible error.

### 18.—Same—Sufficiency of the Evidence—Death Penalty.

Where, upon trial of murder, the evidence fully warranted a conviction of murder in the first degree assessing the death penalty, there was no reversible error.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Robt. B. Seay.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

*Edwards & Ball* and *George, Hancock & Hardwicke,* for appellant.— On question of the court's charges on manslaughter, self-defense and defense of another and intimation that defendant's alibi theory was not true: Mattison v. State, 54 Texas Crim. Rep., 514; Anderson v. State, 34 id., 546; Branch Crim. Law, sec. 460.

On question that offense was either murder in the first degree or alibi the defense: Miller v. State, 32 Texas Crim. Rep., 319; Ex parte Sherwood, 29 Texas Crim. App., 334; Miller v. State, 31 Texas Crim. Rep., 609; Treadway v. State, 65 Texas Crim. Rep., 208, 144 S. W. Rep., 655; Foster v. State, 150 S. W. Rep., 936; Branch Crim. Law, sec. 505.

On question that there was no theory of self-defense: Hooper v. State, 29 Texas Crim. App., 614; Cortez v. State, 69 S. W. Rep., 536; Treadway v. State, 65 Texas Crim. Rep., 208, 144 S. W. Rep., 655, and cases supra.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, PRESIDING JUDGE.—The appellant was convicted of murder in the first degree and the death penalty assessed.

We think it unnecessary to give any detailed statement of the evidence by the several witnesses, but will give a summary of it as a whole. It clearly authorized the jury to believe and find that in daytime in the evening of September 9, 1910, four negroes, towit: appellant Ed Christian, Ed Long, George Williams and Willie Wyatt, by mutual consent, met at the house of Ed Long in the City of Dallas, Texas, and entered into a plot and conspiracy to, that night, rob or burglarize a Texas & Pacific box car while being pulled into the City of Dallas; that Wyatt lived about one mile, or some distance from Ed Long's and that they all sent said Wyatt to his, Wyatt's house to get his six-shooter and to swap it with one Lee Jeffries for a Winchester; that appellant said he wanted to trade the pistol for a rifle for long range shooting; that Wyatt went home, got his pistol and went by to see Jeffries to make the said exchange, but not finding Jeffries, did not make the exchange but took the pistol back to Ed Long's where the others were awaiting his return; that when he returned to Long's, two officers in plain clothes were there and seeing he had something under his coat, inquired what it was and he told them it was his six-shooter. They thereupon, arrested him for carrying the pistol, and soon afterwards placed him in jail and kept him until sometime the next day; that the said four persons and no others entered into said plot and conspiracy; that that night about or after midnight said conspirators, other than Wyatt, did board a Texas & Pacific freight train pulling into Dallas and at or near the Fair Grounds burglarized one of the box cars and threw out therefrom on the right of way, two boxes of goods; that Ed Long at once hired and procured, a one-horse wagon and a small gray mule with small feet, returned to the place where they had thrown out said goods, the other two there awaiting his return, and as soon as he did so, loaded the said goods into the wagon and started off down the right of way; that Henry Bennett, the deceased, was a deputy sheriff whose duties were to look after offenses of burglarizing and stealing goods from railroad cars in said city; that immediately, or soon after

this burglary, he was informed thereof and immediately went to investigate it and if possible apprehend the criminals and arrest them and prevent their getting away with said goods. That when he got near where the goods were thrown out he saw three persons loading said boxes in a wagon and then come down the right of way from where they had just loaded them, one of them in the wagon driving, the other two walking; that he secreted himself behind a gate post where, it seems, the parties were to come off of the right of way and leave the railroad, and that when they got very close to him he drew his pistol, presented it at them and commanded them to halt or hold up; that then appellant, who was one of the two on the ground, immediately stepped from behind the mule and fatally shot the deceased, he dying the next day or the day following; that these three conspirators then made their escape with the goods and went to the residence that night of Lena Tennison with said goods in said wagon drawn by said mule, and appellant awoke him from his bed and endeavored to get him to let them leave these goods secreted at his house; but he declined, and they then left, sold the goods, returned the mule and wagon to the place and person from whom they had hired them, paid for the hire, and the next day divided with said Wyatt (who that day had been released from jail) the proceeds of the sale, paying him $50 as his portion thereof. The evidence tends to show that appellant then left Dallas and succeeded in keeping his whereabouts unknown to the officers and evaded arrest until some year or two later when he was found and arrested in Limestone County, Texas.

Appellant objected to the testimony of E. R. Meeks as to what the deceased said to him as to who shot him or the facts or circumstances surrounding the shooting, because his testimony did not show that at the time deceased made said declarations to the witness he was conscious of approaching death and believed there was no hope of recovery. The court admitted the testimony, holding that it was admissible as a dying declaration and also as res gestae. It was not objected to because it was not res gestae. If it was admissible as res gestae the court's ruling was correct, even though it might not have been admissible as a dying declaration. It is shown by the bill that the witness Meeks was about a half mile from where the shooting occurred and heard it; that he immediately ran there, found deceased shot and lying upon the ground at the place where the shooting occurred and at once voluntarily told the witness the circumstances of his being shot and described the person who shot him and one of the others, the wagon and the mule drawing it. Deceased was suffering intensely from the shot. We are well satisfied that the evidence was clearly admissible as res gestae. (Rainer v. State, 67 Texas Crim. Rep., 87, 148 S. W. Rep., 735.) The testimony of this witness further shows that at the time when they helped the deceased in the ambulance that he took deceased's head in his lap and handed him his pistol; that the deceased replied to him, "Take the gun and take care of it, I will never have any more use for it." To take the

testimony of this witness alone, shown by the bill, we think it shows satisfactorily that at the time of making said declaration he was conscious of approaching death and believed there was no hope of recovery, substantially in compliance with the statute on this subject. (Art. 808, C. C. P.) This was the only ground upon which the testimony was objected to. All the other requisites of the statute are shown to have been complied with. (Miller v. State, 27 Texas Crim. App., 63.) It is shown that his wound was necessarily a fatal one.

Lena (Eugene) Tennison was an important witness for the State and gave material testimony against appellant. The defendant, on cross-examination of him for the purpose of impeaching him by Ada Tennison, asked him if he did not make certain statements to her which would be contradictory if not the reverse of what he testified on the trial. He denied making any such statements to her. Appellant placed her on the stand and she testified that Lena Tennison did make the statements to her which he had denied. The State subjected her to a severe cross-examination whereby her reputation for truth and veracity was placed in issue before the jury. What this examination was is in no way disclosed by the bill. Thereupon, for the purpose of sustaining her general reputation for truth and veracity appellant introduced Mrs. Tabler, who showed that she had lived in Longview many years where Ada Tennison lived and that Ada had worked for her many years; and that she knew Ada's general reputation for truth and veracity at Longview and it was good. On cross-examination of Mrs. Tabler by the State it was shown by Mrs. Tabler that Ada had been operated on about a year before this trial and since then she had been in a feeble condition; and the State then asked her if Ada Tennison was not forgetful since said operation. Upon objection by the appellant this question was excluded from the jury and was not answered. Upon the State then asking some other questions and establishing that Mrs. Tabler had seen Ada Tennison every day for the past year, except about one month and that she had worked for her constantly, the State's attorney repeated the question: "You state she is forgetful?" The appellant again objected to this question, and while the bill states the court overruled the objection, it also shows that no answer whatever was had from the witness. Then the State, proceeding with its cross-examination of Mrs. Tabler, she testified that Ada Tennison's reputation for truthfulness had changed within the last twelve months and that she was not as truthful as before then. Then asked, "She told you stories?" Appellant objected to this question and the court sustained his objection and no answer thereto was had.

Great latitude is always permitted in the cross-examination of a witness. It seems this bill merely complained of the said certain questions which were asked by the State's attorney but not answered. The bill in no way shows any reversible error. Sweeney v. State, 65 Texas Crim. Rep., 593, 146 S. W. Rep., 883, and cases cited.

The only other bill appellant has is he complains that the court would

not permit him to introduce Ed Long and have him testify. Said Long was then also under indictment in the lower court for the killing of deceased, as well as this appellant, though under a separate indictment. The court, of course, committed no error in refusing to permit Ed Long to testify. The statute makes him incompetent. Art. 791, C. C. P.

Appellant urges many objections to the court's charge. Before discussing these objections we will state some of the well established rules pertaining to the giving of charges and how the court's charge shall be construed. These are:

1. The charge must submit to the jury every phase of the case made by the evidence and every legitimate deduction to be drawn therefrom.

2. The charge should be framed with reference to the whole evidence adduced on the trial.

3. The court is not limited or restricted by the testimony of appellant in his own behalf as to the issues to be submitted, but, notwithstanding his testimony, should submit each and every phase of the case suggested by the evidence, whether the theory be presented by the evidence of the State, or defense, or both.

4. The charge should instruct the jury as to the law applicable to every theory within the scope of the indictment which the evidence tends to establish whether favorable to the State or defendant.

5. If the testimony creates a reasonable doubt in the mind of the trial judge as to the necessity of a charge on manslaughter and self-defense, or defense of another, in a murder trial, the doubt should be resolved in favor of the accused and such charge given, in which event, if he gives such charge or charges, no reversible error is caused thereby.

6. In determining the sufficiency of a charge it must be construed as a whole and not by isolated extracts, excerpts, or paragraphs. It must be treated as an entirety and regard must be had to the connection and interdependence of its several parts. A charge in a murder case should not and can not properly all be given in one paragraph as a whole. It should necessarily be given in separate and distinct paragraphs.

7. The charge, and the language thereof, must have a reasonable, and not a strained and unreasonable, construction and the jury must be considered to be reasonably intelligent and capable men, sufficiently so to put such reasonable construction on the charge, and not a strained and unreasonable construction thereon.

8. By the Act of March 12, 1897, amending article 743 (723), Code of Criminal Procedure, the Legislature expressly prohibited this court from reversing a case because of an error of either commission or omission in the charge, unless such error, from the whole record, was calculated to prejudice the rights of the defendant. Even before then, but especially ever since that Act, no conviction should necessarily, and must not ordinarily, be reversed for unnecessary instructions in

favor of the accused.    (We are not considering the amendment of art. 743 under the Act of 1913, p. 328.)

Bearing these rules in mind, we will now state the court's charge and appellant's objections thereto.

The court gave a full, fair and complete charge on murder in the first and second degrees, as in ordinary murder trials.  As we understand, appellant has made no objection to either of these charges, as within themselves wrong.  The court also charged on manslaughter, self-defense and defense of another, and gave a complete and perfect charge on alibi.  Also a charge on principals, reasonable doubt, and the reasonable doubt between the different degrees of murder and manslaughter.

One of appellant's objections is to the entire charge of the court, considered as a whole, claiming that it is on the weight of the evidence and misled and confused the jury, in that as his sole defense was alibi, it impressed the jury with the belief that the trial court did not believe his defense, but believed that he was present and participated in the homicide.  We have carefully, again and again, read and studied the court's charge, in view of this objection and of the rules above announced regulating what charges shall be given, how given and construed, and, in our opinion, this objection is wholly without foundation. Unquestionably the evidence imperatively required the court to submit murder in the first degree, even if it should be conceded that appellant's sole defense was alibi.  By doing so the court, as it should, required the jury to believe every essential fact to establish first degree murder beyond a reasonable doubt, and in no way, as we see it, did the court express or intimate and by no reasonable construction of the language of the charge can it, by implication, be construed, that the court expressed any opinion whatever on the weight of the testimony or in derogation of appellant's claimed alibi.  The same may be said, and is true, of the submission of every other question submitted to the jury for a finding. As we see it, the court expressed, neither directly nor by implication, any opinion to the jury as to his belief or disbelief affecting appellant's claimed defense of alibi.  We can hardly see and appellant has not pointed out, how the court could or should have charged otherwise if it was necessary or proper to submit the several matters to the jury for a finding.

Again, the appellant complains that the court erred in charging on manslaughter and self-defense and defense of another, claiming that because his only defense was alibi that by submitting charges on these subjects to the jury for a finding, that the court improperly led the jury to believe that he was present and participated in the killing, and not to believe his special defense, and also claiming that there was no evidence in the record raising or tending to raise these several issues, and that it put him in the position of relying on inconsistent, conflicting and antagonistic defenses and that the giving of these charges, therefore, must necessarily result in a reversal.

Appellant contends that the evidence in this case established that he was guilty of murder in the first degree or not guilty at all. He concedes, in his brief, that ordinarily a charge favorable to defendant would be no ground for a reversal. But claims that because, as contended for by him, his sole defense was alibi that the submission of such charges when the evidence did not call therefor necessarily resulted in injury to him.

In Jones v. State, 63 Texas Crim. Rep., 394, we correctly said: "Prior to the enactment of article 743 (723), Code of Criminal Procedure, in construing that article, as it had theretofore been, in connection with article 735 (715), this court had reversed cases where mere technical errors of commission or omission had been made in the charge of the court. The Legislature, in amending article 743 (723), as it was amended by the Act of March 12, 1897, expressly enacted that the judgment shall not be reversed, unless the error appearing from the record was calculated to prejudice the rights of the defendant; whereas, before then, said article as it stood, seemed, and was construed, to require a reversal whether such error was calculated to injure or not. Even before this article was amended, the Supreme Court in Wright v. State, 41 Texas, 246, held that a judgment of conviction would not be reversed for improper instructions given in favor of the defendant; and cases prior to Green v. State, 32 Texas Crim. Rep., 298, which held that where erroneous charges were given, if excepted to, even though such injury inured to the benefit of the accused, required a reversal, were expressly overruled by this court. In Briscoe v. State, 37 Texas Crim. Rep., 464, on a trial for murder where the evidence established murder in the first degree, it was held that defendant could not be heard to complain that the court gave him a charge upon murder in the second degree. Also in Gonzales v. State, 35 Texas Crim. Rep., 33, this court held that a defendant who had been convicted of manslaughter could not claim any possible injury from a charge on mutual combat, even when such charge was not required by the evidence; and that a charge upon imperfect self-defense, though not called for by the evidence, could do no possible harm to appellant where there was no self-defense in the case. It has also been held in many cases by this court that even though a specific portion of the charge of the court may be erroneous, when it is more favorable to the accused than he was entitled to upon the particular questions, he had no ground to complain. Wilkins v. State, 35 Texas Crim. Rep., 525; Scruggs v. State, 35 Texas Crim. Rep., 622; Delgado v. State, 34 Texas Crim. Rep., 157; English v. State, 34 Texas Crim. Rep., 190; Daud v. State, 34 Texas Crim. Rep., 460; Loggins v. State, 32 Texas Crim. Rep., 364; Lujano v. State, 32 Texas Crim. Rep., 414; Boren v. State, 32 Texas Crim. Rep., 637; Green v. State, 32 Texas Crim. Rep., 298; Kelley v. State, 31 Texas Crim. Rep., 216; Sutton v. State, 31 Texas Crim. Rep., 297; Massey v. State, 31 Texas Crim. Rep., 371; Wolfforth v. State, 31 Texas Crim. Rep., 387; Gonzales v. State, 31 Texas Crim. Rep., 508;

Weathersby v. State, 29 Texas Crim. App., 278; Surrell v. State, 29 Texas Crim. App., 321; Hawthorne v. State, 28 Texas Crim. App., 212; Walker v. State, 28 Texas Crim. App., 503; McCleavland v. State, 24 Texas Crim. App., 202; Carlisle v. State, 37 Texas Crim. Rep., 108."

Of course, there might be a case when appellant's defense was alibi, where the court's charge was so worded as objections like those of appellant in this case, might be well founded. This case, however, and the charges of the court do not present the questions in such a way as to be subject to this objection, even if it should be conceded that the evidence did not raise the questions of manslaughter, self-defense and defense of another.

For the sake of discussing the question further, however, suppose that it be conceded that the evidence did not raise manslaughter, self-defense and defense of another as to call for a submission of them or any of them to the jury for a finding, yet, how is it possible that the appellant was injured or could have been injured thereby? Without doubt, by submitting manslaughter the court gave the jury an opportunity to find him guilty of manslaughter only, and not murder in the first degree, and so by submitting self-defense and defense of another, the court clearly gave the jury the authority to find him not guilty at all; and, as we see it, considered as a whole, the submission of these questions to the jury by the court were each and all favorable to appellant and in his behalf, and could not, and did not prejudice him in the least.

Again, we can not say that the evidence may not have been sufficient to raise each of these questions in appellant's favor. If so, under the above well established rules, there was no error in submitting them which could or should require a reversal of this case.

Take for instance the question of manslaughter. Under one theory and phase of the evidence it might well be contended that it tends to show that the attempted arrest of appellant and his confederates by the deceased at the time deceased was killed was not a legal arrest or attempt to arrest. The officer, Bennett, it was shown, secreted himself from appellant and his confederates by getting behind a post as they were coming toward him and when they got within a short distance of him he suddenly emerged from behind the post, presented his drawn pistol suddenly, and demanded that the parties halt or hold up; that he did not then disclose to appellant and his associates that he was an officer or was attempting to make a legal arrest of them. Mr. Branch, in his work on Criminal Law, in one paragraph of sec. 437, says: "If attempted arrest is illegal, defendant has the same right to resist as if the officer was merely a private citizen. Lynch v. State, 41 Texas Crim. Rep., 510; Miers v. State, 34 Texas Crim. Rep., 161; Earles v. State, 94 S. W. Rep., 464." In another paragraph, under the same section, he says: "The law sets such a high value upon the liberty of a citizen that an attempt to arrest him unlawfully is esteemed a great provocation, and if it produces such passion as renders him

incapable of cool reflection may reduce the homicide to manslaughter. Sherwood v. State, 29 Texas Crim. App., 334; Dyson v. State, 14 Texas Crim. App., 454; Miller v. State, 31 Texas Crim. Rep., 609; Meuly v. State, 26 Texas Crim. App., 274; Money v. State, 65 S. W. Rep., 926; Earles v. State, supra; Ledbetter v. State, 23 Texas Crim. App., 247; Peter v. State, 23 Texas Crim. App., 684; Goodman v. State, 4 Texas Crim. App., 349; Johnson v. State, 5 Texas Crim. App., 43; Ross v. State, 10 Texas Crim. App., 455; Jones v. State, 26 Texas Crim. App., 1; Mundine v. State, 37 Texas Crim. Rep., 5; Alford v. State, 8 Texas Crim. App., 545; Hardin v. State, 40 Texas Crim. Rep., 208; Lynch v. State, supra; Cortez v. State, 44 Texas Crim. Rep., 169; Scott v. State, 49 Texas Crim. Rep., 386."

Again, in another subdivision under said section, he says: "Whether arrest was legal or not, the power to arrest may be exercised in such a wanton and menacing manner as to threaten the accused with loss of life or serious bodily injury; in such a case, though attempted arrest was lawful, the killing would be justifiable. Jones v. State, 26 Texas Crim. App., 1; Sherwood v. State, 29 Texas Crim. App., 334; Alford v. State, 8 Texas Crim. App., 545. Or if attack was of a milder character, manslaughter would be presented from such character of arrest. Vann v. State, 45 Texas Crim. Rep., 434; James v. State, 44 Texas, 314."

The court in charging on manslaughter, after giving the proper and necessary definition thereof, strictly in accordance with the statute on the subject, and defining sudden passion as defined by the statute and adequate cause, as so defined, also charged:

"You are further instructed that if an officer or other person attempts to seize or arrest an offender or supposed offender and uses more force than is necessary for such purpose, or uses unreasonable means to secure the arrest or detention of such offender this would be deemed in law an adequate cause; and you are further instructed that any fact or circumstance, or set of facts or circumstances, such as would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper sufficient to render a man incapable of cool reflection, would be deemed in law adequate cause." Then further told the jury that in order to reduce voluntary homicide to manslaughter it was necessary that adequate cause existed to produce the state of mind referred to sufficient to render it incapable of cool reflection, and also that such state of mind did actually exist at the time. Then further, properly following the statute, told them that it was their duty in determining the adequacy of the provocation and the state of defendant's mind at the time, to consider all the facts and circumstances in evidence. Then correctly submitted to the jury whether or not appellant was guilty of manslaughter and required the jury to believe beyond a reasonable doubt everything that was necessary to do so, and if so, to find him guilty of manslaughter.

In charging on self-defense and defense of another, the court correctly laid down the principles of law on that subject, and, among

other things, told the jury, in substance and effect, that a person had the right to seize personal property which had been stolen and take charge of the supposed offender when making off with such goods and take him before a magistrate for examination; and such person may use all reasonable means to so secure the seizure of the property and the detention of the supposed offender but that no greater force was permitted than necessary for that purpose, and if greater force than necessary was used by deceased in the attempted seizure of the property or arrest or detention of the parties, the same was illegal and the defendant or any of said parties had the legal right to resist it and if necessary, or apparently necessary in their defense, to kill Bennett while engaged in such unlawful arrest, and that what he had a right to. do for himself he had the right to do for his companions. Then submitted self-defense, and defense of another on these lines, and told the jury if appellant shot the deceased under any such circumstances, to find him not guilty.

Doubtless, the learned trial judge, in properly guarding appellant's rights, reasonably concluded that the whole evidence in the case raised and tended to raise the questions of manslaughter, self-defense and defense of another in appellant's favor, and in order to guard all of his rights and that he might have the benefit thereof, submitted these questions to the jury for a finding. We think the court did right in submitting these questions, or, at least, that his doing so, under the circumstances, and the law, presents no reversible error.

The court also charged the law of principals. As we understand, appellant concedes.that the charge abstractly is a correct one and does not contend that as an abstract question it is incorrect. But he does contend that to give the charge at all was inapplicable and hurtful in that it would make him liable for the act of one of his co-conspirators, which was not contemplated by him or intended by him. In other words, as an illustration, that it may have been his intention only to burglarize the car and steal the goods and not to kill any person or officer in the consummation thereof, and that one or the other of his associates went outside of and beyond that purpose and for some intent of their own, unknown and not participated in by him, intentionally killed the officer. It is unnecessary to enter into an extended discussion of this question. We think it altogether proper and pertinent that the court should have charged the general principles of principals in this case. It was necessary to do so in order that the jury might thoroughly understand and comprehend the questions necessary for them to consider and decide. Appellant's contention can not be maintained, because the court, in every instance where it submitted the killing of the deceased, expressly required the jury to find that appellant himself, and not any of his confederates, fired the shot and did the killing. The charge not only required this expressly as an affirmative fact, but also distinctly and clearly told the jury that "if you find and believe from the evidence

that some party or parties shot and killed the deceased at the time and place charged in the indictment, but you have a reasonable doubt as to whether it was this defendant who did so, you will acquit him." Again, "or if you believe from the evidence that Lena Tennison was present with parties other than this defendant and that the said Lena Tennison shot and killed the deceased, you will acquit the defendant, and if you have a reasonable doubt as to whether or not this is true, you will give the benefit of such reasonable doubt to the defendant and acquit him." And still again in submitting alibi he charged, "if the evidence raises in your minds a reasonable doubt as to the presence of the defendant at the place where the offense was committed at the time of the commission thereof you will find him not guilty." So that in no contingency is the charge of the court on this subject erroneous as contended.

The law, at the time this offense was committed, and the case tried, by article 1141, Penal Code, was: "All murder committed by poison, starving, torture, or with express malice, or committed in the perpetration, or in the attempt at the perpetration, of arson, rape, robbery or burglary, is murder in the first degree." The court, in accordance with the evidence and this statute, in substance and effect defined to the jury burglary and theft in connection therewith, and gave an appropriate charge that if appellant and his co-conspirators had the agreement or understanding that they would arm themselves with a pistol or other deadly weapon, and shoot or kill any person or persons who opposed them in the execution of their said design to commit burglary and theft and carrying away of the property acquired thereby, and that these persons were present at the time the deceased attempted to arrest them and prevent their carrying away the stolen property, and appellant thereupon shot and killed the deceased unlawfully and with his express malice aforethought, that his offense would be murder in the first degree. Appellant contends that this was inapplicable because the burglary and theft had been completed and that they were not engaged in the perpetration thereof at the time of the killing. In our opinion his contention is entirely too restrictive. The evidence, in effect, shows that the appellant and his co-conspirators entered into a conspiracy to do, and they were doing everything that the charge submitted on this subject, and that while the car had been broken open and the goods thrown out, that the appellant had not completed these offenses in contemplation of this statute, because they were still engaged in the same and were then and there as a part of the acts themselves, attempting to take away the stolen goods. In other words, they were in such juxtaposition to the burglary and theft as that their acts at the time, should and would be considered as in perpetration of the burglary and theft. We think no error is pointed out by appellant on this ground.

No charge on circumstantial evidence was called for and none should have been given.

The court gave a complete and admirable charge on the subject of an

accomplice's testimony, and, in addition, gave the only charge on the subject which was requested by appellant. Among other things he charged that said Wyatt was an accomplice, and correctly submitted to the jury for a finding whether or not Lena Tennison and John Hawkins were accomplices, and that if the jury found that these latter two were accomplices, gave a correct charge as to their corroboration and the corroboration of each of them as well as of the said Wyatt. We are inclined to think that the evidence as a whole shows that neither Hawkins nor Tennison were accomplices, but if so, that not only they, but also said Wyatt, were amply and sufficiently corroborated under the law and the charge of the court.

There were contradictions on some material points in the evidence. There was also impeaching testimony and supporting testimony as to some of the witnesses. The credibility of the witnesses and the weight to be given to their testimony was for the jury,—not for this court. Most of the material facts were unquestionably established without much contradiction or, perhaps in some instances, none. If physical facts and human testimony are to be credited, then clearly the evidence in this case was sufficient to cause the jury to believe beyond a reasonable doubt that appellant, not only entered into the conspiracy to rob the car, steal the goods and carry them off, and kill whoever attempted to prevent this, or arrest him, but that he only,—and not either of his co-conspirators,—with his malice aforethought shot and killed the deceased. The jury, who were wholly disinterested, impartial and fair, have so found upon their solemn oaths. The learned trial judge, who heard all the testimony, by his action in overruling the motion for new trial has sanctioned the verdict of the jury and agrees with them in their finding. There being no reversible error this court has no other alternative than to affirm this judgment which will be accordingly ordered.

*Affirmed.*

[Rehearing denied December 3, 1913.—Reporter.]