**Ira Marshall GOODWIN, Jr., Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–84–185–CR.**

Court of Appeals of Texas, Corpus Christi.

Feb. 21, 1985.

Rehearing Granted March 7, 1985.

Rehearing Overruled March 28, 1985.

J. Manuel Banales, Corpus Christi, for appellant.

Grant Jones, Corpus Christi, for appellee.

Before BISSETT,[1] UTTER and KENNEDY, JJ.

## OPINION

BISSETT, Justice.

This is an appeal from a conviction for voluntary manslaughter under an indictment charging murder. We affirm the conviction, but set aside the punishment assessed and remand the cause to the trial court for the assessment of proper punishment and pronouncement of sentence.

Appellant was indicted for murder and as a habitual felony offender for having caused the death of Warren James Durkee, Jr., by kicking him in the head. Appellant elected to have his punishment fixed by the court rather than by the jury. Trial commenced on April 2, 1984, and on April 4, 1984, appellant was convicted by the jury of the lesser included offense of voluntary manslaughter. Thereafter, on April 5, 1984, the trial court, finding the enhancement allegations charged in the indictment to be true, sentenced appellant to thirty years' confinement in the Texas Department of Corrections and imposed a fine of $5,000. Appellant has timely perfected an appeal to this Court.

Appellant, in his first ground of error, contends that "the evidence is insufficient to support the conviction based on the jury's verdict of guilty of voluntary manslaughter." In particular, he contends that there was no evidence that he was in an excited state of mind and that he was motivated by terror due to the deceased's actions but, on the other hand, contends that he struck the deceased only as a preventative measure. He argues that he is entitled to an appellate acquittal.

The indictment, in pertinent part, provides:

that IRA MARSHALL GOODWIN, JR., hereinafter styled Defendant, on or about the 1st day of October A.D.1983, and before the presentment of this indictment, in the County and State aforesaid, with the intent to cause serious bodily injury to Warren James Durkee, Jr. do the act of kicking Warren James Durkee, Jr. in the head; that such act was clearly dangerous to human life; and that such act caused the death of Warren James Durkee, Jr.

The indictment alleged the offense of murder under TEX.PENAL CODE ANN. §§ 19.02(a)(2) (Vernon Supp.1985).

The Court properly charged the jury on the offense of murder and the included lesser offenses of voluntary manslaughter, involuntary manslaughter, criminally negligent homicide, aggravated assault, and assault.

The record reveals that sometime during the late evening of September 30, 1983, or during the early morning of October 1, 1983, appellant arrived at the Indian Acres Lounge in Corpus Christi, Texas, where he greeted some friends and ordered a "wine cooler". He took a seat on a stool at the bar. Shortly thereafter, Warren James Durkee Jr., also known as "Dirk", the deceased, entered the Lounge. He was intoxicated at the time, walked unsteadily, toppled several chairs, bumped into a couple of people and took a position between Rene Rodriguez, a patron of the Lounge, and appellant. Durkee then commenced yelling at Rodriguez and, apparently, spat in Rodriguez's face. Rodriguez ignored him and

**1.** Associate Justice (Ret.), Court of Appeals, Thirteenth Supreme Judicial District, sitting by designation. TEX.REV.CIV.STAT.ANN. art. 1812(d) (Vernon Supp.1985).

Durkee then turned to appellant and said something to him. Several remarks passed between appellant and Durkee and then, according to appellant's testimony, Durkee took a swing at appellant. While still sitting at the bar, appellant hit Durkee with his left hand causing the latter to fall backwards into a table. When Durkee attempted to get up, appellant stood up and hit him again causing Durkee to land on his rear on the floor. Appellant testified that he then kicked Durkee in the stomach and, as he was again getting up, appellant kicked him in the face "in the area of the chin."

Brandy Sunshine Johnson, a State's witness, was also in the Lounge at the time of the confrontation between Durkee and appellant. She testified that she was sitting at a table when someone told her "to watch out". She looked around and saw Durkee "come flying over a table". She then saw appellant kick Durkee "under the chin" and, after that, saw him "apply more kicks, one towards the head and the rest towards the rest of his body." Johnson further testified:

> I tried to give him CPR (Cardio-Pulmonary Resuscitation). I don't know whether he was breathing on his own or what I was doing, but every time he would breathe blood would gush out of his mouth.

On cross examination, Johnson, in response to certain questions asked by appellant's counsel, testified:

Q All right. When do you say that you saw him, that you saw Mr. Goodwin kick Dirk in the chin? When did that happen?

A As Dirk was going through the air over the table he come up along the side and kicked him and caught him in the chin.

Q Had he already hit the ground?

A No. He hadn't gone clear down to the floor, yet.

　　*　　*　　*　　*　　*　　*

Q Okay. You say that after Dirk landed on the floor that Mr. Goodwin kicked him several times, is that right?

A Yes, sir.

Q And he kicked him, did you say once in the head?

A Yes, sir.

Q And the rest on the body?

A Yes, sir.

Q All right. You didn't see Dirk make any move to get up?

A No, sir. He never moved, except his head rolled whenever Mr. Goodwin kicked him. Other than that he didn't move.

Johnson also testified that Durkee, whom she knew as "Dirk," was then carried outside by several men and that in doing so they dropped him and his right shoulder "hit the floor".

Betty Larson, also a State's witness, was in the company of Johnson during the confrontation between appellant and Durkee. She testified that she did not see what occurred, if anything, at the bar between Durkee and appellant. She first became aware of the altercation when Durkee fell on the floor in front of her table. She testified that she saw appellant kick Durkee about four or five times "all over Durkin's (sic) body." However, she could not say that appellant ever kicked Durkee in the head.

It is undisputed that appellant was wearing boots at the time of the incident. They were introduced into evidence.

Nancy Kreger, a witness for the defense, testified that she did not see the appellant kick Durkee. However, she did testify that when some people were carrying him out, they dropped him and "he landed on his head, the back of his head."

Michael Joe Brown, a witness for the defense, testified that he heard some noise "to his back" and when he turned around he saw appellant hit the deceased with his fist and that the deceased, who was trying to fight, fell back onto the floor and that he fell on his right shoulder and back. While he could not see clearly what was going on because there were people in front of him,

he said that after the deceased landed on the floor "it looked like a kicking action to his stomach." He further stated that he could not see the deceased's head "really good."

Rene Rodriguez, another witness for the defense, testified that when he was in the Lounge appellant came in, and they commenced a conversation at the bar. Rodriguez stated that, while he was talking to appellant, the deceased came up to appellant and said something to him; appellant pushed the deceased who then "came back at appellant" and started yelling at him. Rodriguez did not know what the deceased said to appellant, but he did say that appellant took a swing at the deceased. He did not remember where appellant hit the deceased.

Dr. Joseph C. Rupp, the Nueces County Medical Examiner, testified for the State. On direct examination, he stated that the deceased died as a result of a lacerated vertebral artery with hemmorage into the brain. In describing the area of the laceration, Rupp said that the artery is unprotected for a very short distance and if that area is injured by a kick, a sharp blow, or a punch to the back of the head, it can tear because it is unprotected by bone. Rupp further stated that, as a result of such trauma, the blood then bleeds into the skull and produces a tremendous amount of pressure around the brain which causes a very rapid incapacitation and death. Dr. Rupp stated that his examination of the deceased showed a large amount of hemmorage in the brain, with the bleeding coming from the base up. There were marks in the mastoid area of the deceased's head which indicated that there had been a trauma to that particular area. In addition to the trauma in the mastoid area of the deceased's head, Dr. Rupp testified that the deceased had a large laceration of the lower lip and it appeared that the lower lip had been "nearly bitten through." Also, he observed a bruise on the right side of his head, and that the upper right eyelid and the lower left eyelid were black. He also noted abrasions along the left side of the jaw, on the tip of the chin, and on the curved portion of the left ear. There were scratches on the deceased's left arm and a rectangular abrasion about four inches by two inches in size on the left upper abdomen and abrasions in the left anterior area below the nipple level. Dr. Rupp further testified that the deceased, at the time of his examination, had a blood alcohol level of 0.346 percent. He said that the alcohol content of the deceased's bloodstream was the equivalent of a pint of whiskey or of fifteen or sixteen beers, and that the deceased was approaching a lethal level of alcohol.

On cross examination, Dr. Rupp testified that alcohol produces changes in personality, but the changes vary from person to person. He also testified that he could not imagine anyone hitting another person with enough force to knock them across a table without touching the table. Dr. Rupp explained that the vertebral artery in the mastoid area of the head can be severed by a blow to that particular area of the head, but the blow does not have to be delivered to that exact spot. He further testified that a blow to the chin would not lacerate the artery.

On redirect examination, Dr. Rupp testified that a person could die as a result of being kicked at almost any place in the head and that the head is very vulnerable. According to Dr. Rupp, there was no evidence that the deceased had any natural disease or any natural defects in the arterial system of his brain.

The foregoing summary of the evidence, excluding the testimony of Dr. Rupp, came from witnesses called by both the State and appellant who were witnesses to some part of the altercation between the deceased and the appellant. Other witnesses testified as to other facts. However, there is no need to summarize those facts. We do, however, note that there was considerable evidence indicating that Brandy Sunshine Johnson was drunk at the time in question. Appellant insists that she was so drunk that her testimony did not have any probative value. Defense witnesses testified

that she was very drunk. The witnesses for the State, including a police officer who talked to her at the scene and within minutes after the fight, testified that she was not drunk. All of that testimony was properly before the jury.

Appellant took the stand. In addition to his testimony which has already been set out herein, appellant testified that he believed that the deceased was going to cause him "trouble and injury," and this belief existed after having considered the deceased's degree of intoxication. Appellant said that, immediately before the altercation, he and the deceased exchanged words, and that the deceased took "a swing" at him. He further testified:

Q All right. And what did you do?

A I hit him.

Q All right. How did you hit him?

A I hit him with a left hand. I was still sitting down and I hit him with my left hand and backed up and bumped into a table and he started coming back for me. So, I stood up and then I hit him again. And he sat down on his rear end on the floor and when he did I think I kicked him in the stomach.

Q All right. And then what happened?

A May I show you on the diagram?

Q Yes, please.

A At this round table here where the large group of people was sitting there was a man sitting there. Well, when I kicked Mr. Durkin (sic) in the stomach a man jumped up from that table and got on me. And I was yelling with him and I could see Mr. Durkin (sic) getting back up and I reached over and I kicked him in the face.

Much of appellant's defense was devoted to an attempt to show that the deceased provoked the incident. Counsel for appellant told the jury in his opening statement: "And Rene, (Rodriguez) especially is going to testify that Dirk came in between Rene and my client, created the confrontation, created the scuffle. My client, according

to Rene's testimony, pushed him off." Rodriguez testified that appellant and the deceased were standing face to face with their arms raised like they were fighting; that the deceased approached him and appellant; coming right up into their faces and spitting and yelling; that the deceased, who took the first swing at appellant, appeared to be outraged, kept going towards appellant and screaming at him; that the deceased was plainly drunk at the time and was very belligerent; and that the deceased had a bad reputation for sobriety and for being a peaceful and law-abiding citizen.

According to his own testimony, appellant, in contrast to the condition of the deceased, had been sober, and had arrived at the Indian Acres Lounge "in a real nice attitude." Appellant said that he was minding his own business when the deceased picked a fight, and he was not going to just sit there and let the deceased strike him.

We next examine the charge in this case. After defining murder and the culpable mental state of acting "intentionally," the trial court applied the law of murder to the facts of this case, as follows:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 1st day of October, 1983, in Nueces County, Texas, the Defendant, IRA MARSHALL GOODWIN, JR., did then and there with the intent to cause serious bodily injury to Warren James Durkee, Jr. commit an act clearly dangerous to human life, namely the act of kicking Warren James Durkee, Jr. in the head and that such act caused the death of Warren James Durkee, Jr. and at the time he kicked Warren James Durkee, Jr., if he did, he was not acting under the immediate influence of sudden passion arising from an adequate cause, then you will find the Defendant, guilty of Murder.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant as to the charge of Murder and

next consider whether he is guilty of Voluntary Manslaughter.

Next, the trial court defined the offense of voluntary manslaughter and the terms "sudden passion" and "adequate cause," in these words:

Our law further provides that a person commits the offense of Voluntary Manslaughter if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause.

"Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed, which passion arises at the time of the offense and is not solely the result of former provocation.

"Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

The trial court then applied the law of manslaughter to the facts of this case in the following language:

If you find from the evidence beyond a reasonable doubt that on or about October 1, 1983 in Nueces County, Texas, the Defendant, IRA MARSHALL GOODWIN, JR. did then and there intend to cause serious bodily injury to Warren James Durkee, Jr. and committed an act clearly dangerous to human life, namely the act of kicking Warren James Durkee, Jr. in the head and that such act did thereby cause the death of Warren James Durkee, Jr. as alleged in the indictment, but you further find from all the facts and circumstances in evidence in the case that the Defendant, in killing the deceased, if he did, acted under the immediate influence of sudden passion arising from an adequate cause, then you will find the Defendant guilty of Voluntary Manslaughter.

The offense of voluntary manslaughter, a lesser included offense of murder, is essentially the commission of murder under mitigating circumstances. Proof of the greater offense of murder will sustain a conviction for a lesser included offense of voluntary manslaughter. *Daniel v. State*, 668 S.W.2d 390, 394 (Tex.Crim. App.1984).

In *Jefcoat v. State*, 644 S.W.2d 719, 725 (Tex.Crim.App.1982), the Court said:

However, where a jury, as here, has found a defendant guilty of the lesser included offense of voluntary manslaughter it is only necessary for this Court to make the determination of whether or not the evidence was sufficient to establish the offense of murder. If that determination is made, and it is unfavorable to the defendant, the defendant is in no position to complain because the finding of the jury that the defendant was guilty of voluntary manslaughter, though error from the standpoint of a reviewing court, was error favorable to the defendant, of which he cannot complain on appeal.

In the case at bar, there was sufficient evidence presented to establish the offense of murder, and appellant does not contend otherwise in his first ground of error. The jury found appellant not guilty of murder, but, based upon its version of the facts in evidence, found appellant guilty of the lesser included offense of voluntary manslaughter. *Jefcoat*, 644 S.W.2d at 725. After reviewing the evidence, we find that the evidence was sufficient to support a finding of murder.

As hereinbefore noted, appellant contends that his conviction should be reversed because there was no evidence that he caused the death of Durkee "under the immediate influence of sudden passion arising from an adequate cause." We agree with appellant that the evidence does not support a finding of sudden passion arising from an adequate cause. However, acting under such circumstances is not an element of voluntary manslaughter which must be proved by the State, but is instead a de-

fense to murder that reduces the offense to voluntary manslaughter. *Humphries v. State*, 615 S.W.2d 737, 738 (Tex.Crim.App. 1981); *Braudrick v. State*, 572 S.W.2d 709, 710 (Tex.Crim.App.1978.)

Here, there was sufficient evidence from which the jury could conclude that appellant committed an act clearly dangerous to human life with intent to cause serious bodily injury, namely, kicking Durkee in the head, and that he died as a result of that act. An examination of the paragraphs of the charge quoted above demonstrates that, as submitted to the jury in this case, a finding of guilty under the voluntary manslaughter paragraph required the jury to find all elements of murder. That the jury also found the additional element of acting under the immediate influence of sudden passion arising from an adequate cause, even though it was erroneously submitted under that paragraph, and even though it was not supported by the evidence, does not conflict with the necessary conclusion that the jury found all elements of murder. The argument by appellant that the jury must have found appellant not guilty of murder in order to consider the offense of voluntary manslaughter is based on the assumption that the jury reached a decision under the murder paragraph before considering the voluntary manslaughter paragraph. When the phrasing of both paragraphs is considered, however, the only logical conclusion is that the jury found all elements of murder, since the paragraph under which the verdict was returned required such a finding. The benefit to appellant from the erroneous submission of the voluntary manslaughter paragraph is obvious. The error was not merely harmless; it was actually advantageous in its consequences for appellant.

It is also argued in appellant's brief that since the evidence did not support a finding of acting under the immediate influence of sudden passion arising from an adequate cause, the evidence was insufficient to support a conviction for voluntary manslaughter. This argument overlooks the fact that the matter of acting under such influence is not an element of voluntary manslaughter. *Braudrick v. State*, 572 S.W.2d at 710. Given the existence of sufficient evidence to support a conviction for murder, appellant cannot complain of his conviction for the lesser included offense of voluntary manslaughter. The first ground of error is overruled.

Appellant, in his second ground of error, asserts that "the trial court erred in submitting to the jury, over appellant's timely objection, a charge on the lesser included offense of voluntary manslaughter." He argues in his brief that "the issue of voluntary manslaughter was not raised by any evidence."

The record reveals that, while appellant did timely object at the trial to the inclusion of a charge on voluntary manslaughter, he did not object on the basis that such issue "was not raised by any evidence," as argued by his counsel in his brief. Appellant's objection was made by his counsel in the following language:

we would not wish to submit to the jury any lesser included offense, whether based on evidence or not. We recognize the consequences.... In effect, what we're asking the Court to do is to submit to the jury the sole issue of murder.... We choose now not to have those lesser included offenses submitted....

The State opposed appellant's objection.

It is clear, from an examination of the record, that, at trial, counsel for appellant did not claim that the evidence was insufficient to submit a charge on the offense of voluntary manslaughter. Having failed to object on that basis at the trial, appellant cannot make the claim on that basis in this appeal. *See Wells v. State*, 634 S.W.2d 868, 872 (Tex.App.—Houston [1st Dist.] 1982, pet. ref'd.).

Appellant is not entitled to pick and choose which offenses should be included in the charge, irrespective of the evidence. *See Humphries*, 615 S.W.2d 737.

If there is evidence raising the lesser included offense, as is the case here,

both the prosecution and the defendant have the right to insist upon and obtain a submission of the lesser included offense charge so the jury will not be subjected to the choice of either acquitting or convicting of the greater offense in those instances where the jury may be, in reality, convinced of only the lesser included offense. The charge should instruct the jury as to the law applicable to every theory within the scope of the indictment which is established by the evidence, whether favorable to either the State or the defendant. The charge in the instant case met that test. *Christian v. State*, 71 Tex.Cr.R. 566, 161 S.W. 101, 103 (Tex.Crim.App.1913). The second point of error is overruled.

In his third and fourth grounds of error, appellant claims that the trial court erred in charging the jury, over his timely objection, on the offenses of involuntary manslaughter and criminally negligent homicide. We do not agree.

■ Appellant was indicted for murder and convicted of voluntary manslaughter. Involuntary manslaughter and criminally negligent homicide are lesser included offenses of both murder and voluntary manslaughter. *See Brooks v. State*, 548 S.W.2d 680, 683 (Tex.Crim.App.1977). Lesser included offenses need not be pleaded in the indictment. *Ex Parte McClelland*, 588 S.W.2d 957, 959 (Tex.Crim.App. 1979).

■ Appellant was not convicted of either involuntary manslaughter or criminally negligent homicide. Therefore, his complaints concerning the charge on those offenses do not furnish a basis for reversal. *Rodriguez v. State*, 661 S.W.2d 332, 336 (Tex.App.—Corpus Christi 1983, pet. ref'd).

■ Moreover, there was sufficient evidence to submit these offenses to the jury. Appellant himself testified that he had not intended to cause the deceased serious bodily injury and had not intended to kill him; that he could not judge how hard he had struck the victim; and that he simply wanted to keep him away from him. Had the jury believed all or portions of appellant's testimony, it could have found either that appellant was aware of the risk of causing the victim serious bodily injury or death but disregarded that risk (involuntary manslaughter) or that he was not aware of that risk but should have been (criminally negligent homicide). The third and fourth grounds of error are overruled.

■ In his fifth ground of error, appellant contends that the trial court erred when it overruled his Motion for Instructed Verdict made at the close of the State's evidence. In his sixth ground of error, he claims that the evidence was insufficient as a matter of law to sustain a conviction for voluntary manslaughter. Both grounds of error are grounded on the same contention, namely, that the State failed to prove that the kicks which appellant delivered to the head of the deceased caused his death, and that the State failed to prove that there was a blow to the general area behind the right ear of the deceased and not to just the head.

Appellant's argument is based on a faulty premise. It was not incumbent upon the State to produce evidence that appellant's kicks fell precisely in the right mastoid area of the victim's head. Instead, it was incumbent upon the State to prove, as charged in the indictment, that appellant committed the act of kicking the deceased in the head and that the act caused the victim's death. *See Benson v. State*, 661 S.W.2d 708, 713 (Tex.Crim.App.1982). The testimonies of Brandy Johnson and Dr. Rupp constitute credible evidence which supports the allegations contained in the indictment.

■ The State met its burden of proof in this case. Although no witness pinpointed the exact portion of the deceased's head which was struck by appellant's boot, the evidence was undisputed that appellant kicked the victim in the head. Brandy Johnson testified that, after appellant knocked the deceased backwards with a blow, she saw him walk over to the deceased, first kick him under the chin and

then kick him in the head and other parts of his body.

Thus, at the time that appellant moved for an instructed verdict, the State had shown, first, that appellant had kicked the deceased in the head, as alleged in the indictment, and, second, that the deceased had died as the result of a trauma, such as a kick, sharp blow or punch to the head. A jury could reasonably conclude that the kick, which appellant had delivered to the victim's head as the man lay on his back on the floor, had caused his death. The trial court properly overruled appellant's motion for instructed verdict.

When both the State and the defense rested, the evidence was likewise sufficient to support appellant's conviction. The only defense witness who testified as to where appellant's boot had landed was appellant himself.

In effect, appellant argues that his testimony exculpates him on the theory that a blow in the chin area would not have lacerated the vertebral artery. It was not necessary for the State to prove with anatomical precision that appellant kicked the deceased directly in the right mastoid area. Instead, it needed only to prove that appellant kicked the deceased in the head and that the victim died as a result of that blow. Here, appellant himself admitted that, while the deceased lay on the ground (floor), he "assumed" that he had kicked him "in the chin area". The jury was entitled to conclude from all of the evidence that a kick to the head had been lethal, despite appellant's characterization of the area in which it had landed, or that appellant had kicked the victim twice as Brandy Johnson testified, not once as appellant claimed, and that it was the other blow which had killed the deceased.

Appellant further argues that the evidence established that the actions of others caused the death of the deceased. He contends that the evidence showed that the persons who carried the deceased dropped him on his head. He relies on the testimony of defense witness Nancy Kreger, who was working at the Indian Acres Lounge.

She testified that when "Gary" and "Harry" carried the deceased outside, Harry dropped the man and he landed on the back of his head. According to appellant, it was that fall which lacerated the deceased's vertebral artery. According to Dr. Rupp, death was not caused by trauma to the back of the head but by a sharp blow to the mastoid area back of the right ear. The cause of death was a question of fact to be determined by the jury from any facts in evidence which to their minds proves its existence. *Samuel v. State*, 477 S.W.2d 611, 613–614 (Tex.Crim.App.1972). The record contains sufficient evidence to support the jury's verdict. The fifth and sixth grounds of error are overruled.

In his seventh ground of error, appellant contends that the trial court improperly overruled his objection that the prosecutor was misstating the evidence in her closing argument. During the course of that argument, the prosecutor argued that Betty Larson had testified that she remembered that appellant had kicked the victim in the head. Appellant told the trial court that the prosecutor had misstated the evidence and claimed that Ms. Larson had not testified that she saw anyone kick the victim in the head. The prosecutor told the court her opinion as to what the evidence had been. The court then cautioned the jury:

> The jury is again reminded it is the judge of the evidence in the case and the weight to be given thereto.

Appellant's recollection of the evidence was correct, and the prosecutor's recollection thereof was incorrect. Ms. Larson, when asked whether appellant had kicked the victim in the head, had responded: "I'm not sure. I couldn't say." The prosecutor's misstatement of the testimony by Ms. Larson, however, does not provide a basis for reversal, since it is well established that the test as to whether an improper statement by a prosecutor constitutes reversible error is whether, in light of the record as a whole, the comment is extreme or manifestly improper, is violative of a mandatory statute or injects new facts that are harmful to the accused in the trial

proceeding. *Todd v. State*, 598 S.W.2d 286, 297 (Tex.Crim.App.1980); *Trevino v. State*, 641 S.W.2d 626, 629 (Tex.App.—Corpus Christi 1982, pet. ref'd). Here, the State's misstatement cannot be characterized as extreme or manifestly improper. From the record, it appears to have been simply a faulty recollection of a witness' response. No statute was violated, and the remarks did not place in evidence matters that were not otherwise before the jury. Although Ms. Larson could not recall where appellant's kicks had landed, another witness, Ms. Johnson did testify that appellant had kicked the victim in the head.

Here, the statement of which appellant complains was rendered harmless by the trial court's admonition to the jury. *Smith v. State*, 513 S.W.2d 823, 830 (Tex.Crim. App.1974); *Aranda v. State*, 640 S.W.2d 766, 776 (Tex.App.—San Antonio 1982, no pet. hist). The seventh ground of error is overruled.

■ In his eighth and final ground of error, appellant argues that the trial court's sentence was improper because it assessed a fine of $5,000, and, therefore, the judgment should be reversed and the cause remanded for a new trial. Appellant, who was sentenced as an habitual felony offender pursuant to Section 12.42(d) of the Texas Penal Code, is correct that § 12.42(d) authorizes a term of confinement between 25 and 99 years, but no fine.

■ The proper remedy, however, is not a reversal and remand for a new trial, as appellant suggests. Had he been sentenced by a jury, a new trial would have been mandated. *See Bogany v. State*, 661 S.W.2d 957, 958 (Tex.Crim.App.1983). Here, however, appellant elected to go to the trial court and not the jury for punishment. In that state of the record, the punishment assessed by the trial court should be set aside and the case remanded to the trial court for the assessment of proper punishment and the pronouncement of sentence. *See McCullough v. State*, 351–83 (Tex.Crim.App. December 7, 1983) (not yet published); Bullard v. State, 548 S.W.2d 13 (Tex.Crim.App.1977); *Lechuga v.*

*State*, 532 S.W.2d 581, 582 (Tex.Crim. App.1975); *Saunders v. State*, 511 S.W. 2d 281, 283–284 (Tex.Crim.App.1974); *Payton v. State*, 506 S.W.2d 912 (Tex.Crim. App.1974).

Accordingly, the judgment of the trial court is affirmed, except as to punishment. The punishment assessed by the trial court is set aside, and the cause is remanded for proper assessment of punishment and pronouncement of sentence.

## OPINION ON COURT'S OWN MOTION FOR REHEARING

We granted a motion for rehearing to reconsider the appellant's grounds of error in light of *Bradley v. State*, 688 S.W.2d 847 (Tex.Crim.App.1985), decided by the Court of Criminal Appeals six days after our original opinion in this cause.

■ Moreover, we must clarify the language in our original opinion to eliminate any possible confusion concerning the sufficiency of the evidence to support the trial court's instruction on voluntary manslaughter. We expressly hold that the evidence did not raise sudden passion rising from an adequate cause. Any language in the original opinion that can be interpreted as holding otherwise is expressly disavowed.

■ In overruling appellant's first ground of error, we held that, although the charge on voluntary manslaughter was erroneously submitted to the jury by the trial court, the error was beneficial to the appellant. We also held that "acting under sudden passion rising from an adequate cause" was not an element of voluntary manslaughter, and the State was not required to introduce evidence of sudden passion rising from an adequate cause to sustain this conviction. We now find that this language is in direct conflict with the new holding of the Court of Criminal Appeals in *Bradley*. We, therefore, agree with appellant's contention in his first ground of error that the trial court erroneously submitted an issue of voluntary manslaughter to the jury. The error, however, does not

require a reversal of the conviction unless appellant timely objected to the charge on the basis that the evidence was insufficient to support a conviction of voluntary manslaughter. As the Court of Criminal Appeals stated in *Bradley* (688 S.W.2d at p. 853):

> We hasten to add that this disposition of the case hinges on the fact that appellant vociferously objected to the inclusion of the voluntary manslaughter charge. Failure to object to the charge when given on the ground that the evidence does not support it would signal acquiescence on the part of the accused in the trial court's judgment that sudden passion was raised.

In our original opinion, we held that appellant had failed to object to the charge on the ground that voluntary manslaughter was not raised by the evidence. Since the disposition of this case now hinges on the objection made by defense counsel at trial, we set forth the objection:

MR. BANALES (defense counsel): Your Honor, we would have one objection. Your Honor, we first recognize that when we had the Voir Dire that I told the jury that there might be the possibility that lesser included offenses might be submitted to the jury in the Court's Charge. And, as a matter of fact, I submitted to the Court with copies to the Prosecution a proposed Charge that included three lesser included offenses and those were voluntary manslaughter, aggravated assault and assault. I've talked to my client regarding, as I understand, the law of lesser included offenses. And after careful and deliberate discussions with my client on this particular issue my client and I have agreed that we would not wish to submit to the jury any lesser included offense. Whether based on the evidence or not. We recognize the consequences. My client has instructed me to urge the Court not to submit the lesser included offenses of voluntary manslaughter or of involuntary manslaughter or of criminally negligent homicide or of aggravated assault or of assault. In effect what we're asking the Court to do is to submit to the jury the sole issue of murder. And upon that basis with my client's instructions and after having discussed with him and explained to him the law of the lesser included offenses we choose now not to have those lesser included offenses submitted. The second objection that we have, Your Honor, is that we feel that there is no evidence to support the submission of the lesser charges of involuntary manslaughter and criminally negligent homicide. For one, the culpability requirement I don't think is important in any degree by the evidence. I think all the evidence shows voluntary conduct on my client's part. I don't think that there's any degree of recklessness in there. I don't think that there's any degree of criminal negligence in the evidence. Consequently, we would ask the Court not to submit the offenses of involuntary manslaughter and criminally negligent homicide.

COURT: All right, taking the second matter first this really is an objection to submitting involuntary manslaughter and criminally negligent homicide on the grounds that there's no evidence to support the submission.

MR. BANALES: Yes, sir.

COURT: And your first objection, I take it, is that you're objecting to the case being submitted on any lesser included offenses of murder to be submitted and requesting it to be submitted either as murder or not guilty?

MR. BANALES: Yes, sir.

COURT: In other words, murder or nothing.

MR. BANALES: Right.

COURT: State?

MS. COLTRIN: On the first contention regarding the other lesser included offenses and whether the evidence supports the finding I don't like to be arguing what Defense Counsel may argue later, but I do think that there is evidence raised that Defendant was angered by a drunk pushing him, spitting. May have spit on his face, was yelling at him. Had his hands up. And I think that that

raises the issue of voluntary manslaughter. As far as the involuntary manslaughter and the criminal negligence there was testimony again by the Defense himself that when he kicked the Defendant—excuse me, when he kicked the victim he only meant to keep him down. He didn't mean to hurt him. And I think that that would raise the issue of involuntary manslaughter and criminal negligence.

COURT: Well, the first objection is considered by the Court, to say the least, it's very unusual to have such an objection come from the Defense. The Court feels that it has the duty and the responsibility of correctly charging the jury. Accordingly, the Court will overrule the first objection or state it (sic) differently will deny the request that the case be submitted on no lesser included offenses. Second objection is denied or overruled. Anything else?

MR. BANALES: We're ready, Your Honor.

MS. COLTRIN: Not from the State.

We now adhere to our original holding that error was not preserved. Appellant's counsel made essentially two objections. His first was that his client and he agreed that no lesser included offenses should be submitted to the jury, *"whether based on the evidence or not."* Counsel's second objection was that the evidence did not raise the lesser included offenses of involuntary manslaughter or criminally negligent homicide.

 As noted in the original opinion, the trial court charged the jury on voluntary manslaughter, involuntary manslaughter, criminally negligent homicide, aggravated assault and assault. From appellant's objection, it is clear that, with regard to involuntary manslaughter and criminally negligent homicide, the objection was specifically directed to the sufficiency of the evidence. With regard to voluntary manslaughter, aggravated assault and assault, the extent of the objection was only that appellant did not wish for the jury to be charged on these issues. As noted in the original opinion, an appellant is not entitled to pick and choose which offenses should be included in the charge, irrespective of the evidence. *Humphries v. State*, 615 S.W.2d 737 (Tex.Crim.App.1981). The trial court, thus, correctly overruled appellant's wholesale objection to the inclusion of all lesser included offenses on the basis that appellant "did not wish to submit to the jury any lesser included offenses."

Appellant's second objection, raising sufficiency of the evidence, was limited to the issues of involuntary manslaughter and criminally negligent homicide. This objection was insufficient to support the ground of error now raised by appellant on appeal.

We further note that at no time did appellant's counsel argue that the evidence was insufficient to raise sudden passion rising from an adequate cause. This matter simply was not addressed by appellant's objection or argument. We adhere to our original disposition of appellant's second ground of error.

Appellant has also filed a motion for rehearing. We have considered his arguments, and they are without merit. Appellant's motion for rehearing is overruled. Accordingly, the judgment of the trial court is affirmed, except as to punishment. The punishment assessed by the trial court is set aside, and the cause is remanded for proper assessment of punishment and pronouncement of sentence.