

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00075-CR

---

KENDELL SHAWN VANBELLE                                    APPELLANT
A/K/A SHAWN VANBELLE

V.

THE STATE OF TEXAS                                            STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant Kendell Shawn Vanbelle a/k/a Shawn Vanbelle appeals his

conviction for possessing with the intent to deliver four hundred grams or more of

methamphetamine.[2]   In two issues, appellant contends that the evidence is

----

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Health & Safety Code Ann. §§ 481.102(6), .112(a), (f) (West 2010).

insufficient to support his conviction and that his sentence is void because the jury did not assess a fine.  We affirm.

## Background Facts[3]

One early morning in November 2010, Saginaw Police Department (SPD) Sergeant Ruben Rucker was conducting surveillance on a motel room when he saw two male subjects, including appellant, leaving the room and walking to a pasture area.  Although Sergeant Rucker could not see the subjects once they reached the pasture (because a fence line and trees blocked his view), he could hear them talking.  After staying in the pasture for ten to fifteen minutes, the subjects returned to the motel room.  As appellant was walking back to the motel room, he was carrying a green gym bag.  The subjects stayed in the room for a few minutes and then left again as appellant carried what appeared to be the same green gym bag that he had brought to the motel room minutes earlier.

Shortly after the subjects disappeared from Sergeant Rucker's view, he heard a loud banging noise coming from the area in the motel's parking lot where the subjects had walked.  Because of Sergeant Rucker's concern that he was hearing a break-in of a car, he called for assistance.

SPD Officer Derek Garretson arrived and found a van that contained the two people that Sergeant Rucker had seen entering and leaving the motel room.

---

[3]The facts recited in the first part of this section comprise the testimony of the State's witnesses.  Appellant provided contradicting facts through his testimony, and we will discuss those facts below.

Appellant was on the floorboard in the middle of the van and was attempting to hide himself with what appeared to be a blanket. The other man was in the front of the van and was pretending to be asleep. The bag that appellant had carried to and from the motel was within reach of either man. Upon Officer Garretson's request, the men got out of the van.

When Sergeant Rucker went to the van, appellant gave him "several accounts of whose van it was."[4] Sergeant Rucker asked appellant whether he had been to the motel, and appellant initially denied that he had been there but later admitted going there and gave Sergeant Rucker several reasons why he had gone there. Appellant said that the sliding door on the van was broken and that he had to "beat on it to get in." Appellant also said that he had keys to the van and that he did not care if officers searched it.

Officer Garretson opened the driver's side door to the van, immediately felt a burning sensation on his face, and smelled an "acetone[-]based [odor], mixed with gasoline." The odor burned the inside of Officer Garretson's nose, his throat, and his skin. Sergeant Rucker also smelled the chemical odor. Sergeant Rucker was concerned about whether the chemicals were hazardous, so he called the fire department and told Officer Garretson to back away from the van. The fire department ventilated the van and found the duffel bag that Sergeant

---

[4]According to Sergeant Rucker, appellant initially said that the van belonged to him, but he later said that it belonged to his girlfriend, who had driven him there. At the time of appellant's conflicting statements, Sergeant Rucker knew that the van was registered to a man who was living in Roanoke.

3

Rucker had seen appellant carrying, a glass jar with a substance in it, coffee filters, drain cleaner, lighter fluid, a gas can, and a plastic bottle with a pink vomit-looking substance in it. Because Sergeant Rucker believed that the van contained drugs or materials used to manufacture drugs, he called a narcotics task force for assistance.

Timothy Wing, a Mansfield police officer who had been assigned to investigate narcotics offenses as part of the task force since 2004 and had taken courses on investigating drug labs, arrived at the scene. Officer Wing believed that items that he saw in the van were being used for a "shake and bake method of methamphetamine production." Officer Wing transferred liquid contents of the glass jar and of the three-liter plastic bottle into chemically resistant evidence collection jars. Also, Officer Wing found a coffee filter containing a white powdery substance that presumptively tested positive for methamphetamine, a plastic strainer, a funnel, unused "deal baggies," wire cutters, four lithium batteries, salt, and some rubber tubing. A forensic chemist analyzed the liquid and solid substances found in the van and determined that they comprised more than four hundred grams of methamphetamine.

A grand jury indicted appellant with possessing methamphetamine while having the intent to deliver it and, in another count, with simply possessing methamphetamine. Appellant pled not guilty to both counts. At trial, appellant testified that the van belonged to friends of his, Will and Lena, who had been "helping [him] out"; that someone else had driven him to the motel, where he had

4

visited other friends; that Lena had driven the van to the motel to pick him up; that she had later gone to a bar across the street while he had slept in the van and had waited for her; and that at the time that the police had approached the van, Lena was across the street in the bar. Appellant denied that he had carried the green gym bag to the motel, stated instead that he had possessed and carried a blue bag containing his clothes, denied that he had ever touched the items containing methamphetamine, denied that he ever had the keys to the van, disputed Sergeant Rucker's testimony that he left the motel shortly before being discovered in the van, stated that he did not know the source of the loud banging noise that Sergeant Rucker had heard, and expressed that he only noticed a smell in the van when Officer Garretson opened a bottle.

After hearing all of the evidence and arguments from the parties, the jury convicted appellant of possessing methamphetamine with intent to deliver it. The jury then listened to more evidence concerning appellant's punishment and assessed ninety-nine years' confinement. The trial court sentenced appellant accordingly, and he brought this appeal.

## Evidentiary Sufficiency

In his first issue, appellant contends that the evidence is insufficient to support his conviction. Specifically, he argues that because of language in the jury charge, the State was required to prove that he actually delivered methamphetamine rather than only possessing methamphetamine with the intent

5

to deliver it.[5]   He contends that the "charge did not allow for a finding of possession with intent to deliver.  The jury's only choice was either delivery or plain possession."[6]

The first count of appellant's indictment alleged that he "INTENTIONALLY OR KNOWINGLY POSSESS[ED] A CONTROLLED SUBSTANCE, NAMELY: METHAMPHETAMINE, OF FOUR HUNDRED GRAMS OR MORE, INCLUDING ANY ADULTERANTS OR DILUTANTS, WITH INTENT TO DELIVER SAID CONTROLLED SUBSTANCE[.]"  In front of the jury, appellant pled not guilty to this charge.  In the State's opening statement and closing argument, it reminded the jury that appellant was charged with possessing methamphetamine while intending to deliver it.  The jury charge stated, in part,

> The defendant . . . stands charged by indictment . . . with the offense of delivery of a controlled substance . . . .

---

[5]We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given.  *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).  Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.  *Byrd*, 336 S.W.3d at 246.  As explained below, in this case, the hypothetically correct jury charge and the charge actually given are one and the same; the charge that the trial court gave accurately described the law, was authorized by the indictment, did not unnecessarily restrict the State's theories of liability, and adequately described the particular offense for which the defendant was tried.

[6]Appellant concedes that there was "evidence in the record as to possession."

6

A person commits the offense of "delivery of a controlled substance" if the person knowingly possesses with intent to deliver a controlled substance and the amount of the controlled substance possessed is by aggregate weight, including adulterants or dilutants, 400 grams or more.

. . . .

Now, if you find from the evidence beyond a reasonable doubt that . . . the defendant . . . did intentionally or knowingly possess . . . methamphetamine . . . with intent to deliver said controlled substance then you will find the defendant guilty of the offense of delivery of a controlled substance as charged in count one of the indictment.

Appellant contends that because the jury charge stated that the crime at issue was "delivery of a controlled substance," the "jury found [him] guilty of delivery, even though there is absolutely no evidence in the entire record that a delivery occurred." We disagree with appellant's argument that the State was required to prove that he delivered methamphetamine. The offense supporting appellant's conviction is titled "Manufacture or Delivery of Substance in Penalty Group 1." Tex. Health & Safety Code Ann. § 481.112.[7] A person commits the offense of "Manufacture or Delivery" if the person "knowingly manufactures, delivers, *or possesses with intent to deliver* a controlled substance listed in Penalty Group 1." *Id.* § 481.112(a) (emphasis added); *see Lopez v. State*, 108 S.W.3d 293, 297 (Tex. Crim. App. 2003) (explaining that "[u]nder Texas Health & Safety Code Section 481.112(a), a person commits the offense of . . . *delivery*

---

[7]Methamphetamine is in Penalty Group 1. Tex. Health & Safety Code Ann. § 481.102(6).

7

*. . .* if he 'knowingly manufactures, delivers, *or possesses with intent to deliver*'") (emphasis added); *see also Guerrero v. State*, 305 S.W.3d 546, 557 n.18 (Tex. Crim. App. 2009) (noting that the title of a statute does not limit or expand its meaning).

It is clear to us that the jury charge in this case correctly tracked the indictment and conveyed both the title and substance of section 481.112 by stating that appellant could be convicted of the offense of "delivery" of a controlled substance by possessing while intending to deliver methamphetamine.[8] *See* Tex. Health & Safety Code Ann. § 481.112(a). Further, the application paragraph, which is the "heart and soul" of the jury charge,[9] correctly instructed the jury to convict appellant if it found beyond a reasonable doubt that he intentionally or knowingly possessed four hundred or more grams of methamphetamine with the intent to deliver it. The application paragraph did not purport to require an actual delivery for a conviction under section 481.112, and a hypothetically correct jury charge, being authorized by the indictment and not unnecessarily restricting the State's theory of liability, would

---

[8]In the State's closing argument, a prosecutor properly told the jury,

> Now, when the Court was reading the Court's Charge to you, some of you may have noticed on the verdict form she said delivery of a controlled substance. Don't let that throw you. That's a quirk of the way the statute is worded. It covers delivery or possession with intent to deliver.

[9]*See Vasquez v. State*, 389 S.W.3d 361, 367 (Tex. Crim. App. 2012).

8

not do so either. In *Brackens v. State*, applying section 481.112, the Waco court of appeals rejected an argument similar to the argument made by appellant in this case, stating,

> Brackens complains that the evidence was legally insufficient to support his convictions for Manufacture or Delivery of a Controlled Substance because in each case he confessed only to possession with intent to deliver cocaine, which comported with the facts alleged in the indictment. The State argues that possession with intent to deliver is a means of committing the offense of Manufacture or Delivery of a Controlled Substance. We agree with the State.
>
> The Health and Safety Code defines the offense of "Manufacture or Delivery of Substance in Penalty Group 1" as follows:
>
> > (a) Except as authorized by this chapter, a person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1.
>
> . . . Because Brackens confessed to possession with intent to deliver, we find the evidence legally sufficient.

Nos. 10-00-00351-CR, 10-00-00352-CR, 2004 WL 444551, at \*2 (Tex. App.—Waco Mar. 10, 2004, no pet.) (mem. op., not designated for publication). We conclude, as the *Brackens* court did, that the evidence is sufficient to support appellant's conviction for manufacture or delivery of methamphetamine under section 481.112(a) if, viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of the crime—that appellant possessed more than four hundred grams of methamphetamine while intending to deliver it—beyond a reasonable doubt.

9

*See id.*; *see also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

Appellant contends only that the "record contains no indication of any delivery of any controlled substance"; he does not expressly challenge the sufficiency of the evidence to establish that he possessed the methamphetamine while intending to deliver it, nor does he provide analysis of the evidence concerning possession with intent to deliver. Thus, having rejected the only argument made by appellant in his first issue, we overrule that issue.

### The Validity of Appellant's Sentence

In his second issue, appellant contends that his sentence is void because the jury did not assess a fine. He argues that section 481.112(f) of the health and safety code mandates the assessment of a fine under the facts of this case. *See* Tex. Health & Safety Code Ann. § 481.112(f) ("An offense under Subsection (a) is punishable by imprisonment . . . and a fine not to exceed $250,000, if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, 400 grams or more."). Appellant was not sentenced, however, under section 481.112(f). Instead, the jury found, as the indictment had alleged, that appellant had been finally convicted of two previous felony offenses; this finding subjected appellant to an increased punishment range under section 12.42(d) of the penal code, which states in part that if

10

it is shown on the trial of a felony offense other than a state jail felony . . . that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished by imprisonment . . . for life, or for any term of not more than 99 years or less than 25 years.

Tex. Penal Code Ann. § 12.42(d) (West Supp. 2012).[10]   Section 12.42(d) does not authorize the assessment of a fine.  *See id.*; *Harris v. State*, 903 S.W.2d 514, 515 (Tex. App.—Texarkana 1995, no pet.) ("[T]here is no statutory provision for a fine as a habitual offender."); *see also Goodwin v. State*, 694 S.W.2d 19, 29 (Tex. App.—Corpus Christi 1985, pet. ref'd) (holding that the trial court erred by assessing a fine under section 12.42(d)); *Carey v. State*, 677 S.W.2d 821, 823 (Tex. App.—Fort Worth 1984, no pet.) (concluding similarly).  Thus, we reject appellant's argument that his sentence is void because it does not include a fine, and we overrule his second issue.

---

[10]The foreman of the jury signed his name under a paragraph stating,

> We, the Jury, having found the defendant, Kendell Shawn Vanbelle, guilty of delivery of a controlled substance as charged in the indictment, do unanimously find the allegations in the habitual offender notice are true.  We assess his punishment at imprisonment for 99 years in the Texas Department of Criminal Justice.

## Conclusion

Having overruled both of appellant's issues, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DAUPHINOT, J., filed a dissenting opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 9, 2013